REVISED SEPTEMBER 7, 2007

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 30, 2007**

Charles R. Fulbruge III
Clerk

No. 06-61130

PAUL LEONARD; JULIE LEONARD

                Plaintiffs-Appellees-Cross-Appellants

v.

NATIONWIDE MUTUAL INSURANCE CO.

                Defendant-Appellant-Cross-
Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

Before JONES, Chief Judge, and REAVLEY and SMITH, Circuit Judges.

EDITH H. JONES, Chief Judge:

This homeowner's policy coverage dispute arose from the destruction wrought by Hurricane Katrina along the Mississippi Gulf Coast. We affirm the judgment of the district court, but to do so we must work through some erroneous reasoning that led to its conclusion.

## I. Background

The Leonards' home lies twelve feet above sea level on the southmost edge of Pascagoula, Mississippi, less than two hundred yards from the Mississippi Sound. Hurricane Katrina battered Pascagoula with torrential rain and sustained winds in excess of one hundred miles per hour. By midday, the storm had driven ashore a formidable tidal wave – also called a storm or tidal surge – that flooded the ground floor of the Leonards' two-story home.

A.    The Policy

The Leonards purchased their first Nationwide homeowner's policy from Nationwide's Pascagoula-area agent, Jay Fletcher, in 1989. Although Nationwide twice revised its standard homeowner's policy language between 1989 and 2005, the Leonards' "Form HO-23-A" policy that was in force when the storm made landfall was substantially indistinguishable from the "Elite II" policy they originally purchased.

Like almost all homeowner's policies, Nationwide's Form HO-23-A is a "comprehensive," or "all-risk," policy pursuant to which all damage to dwellings and personal property not otherwise excluded is covered. Also, like almost all homeowner's policies, Nationwide's policy covers only damage caused by certain instrumentalities – or "perils" – and excludes damage caused by others. Relevant to this appeal are the policy provisions that define the scope of coverage for damage caused by (1) wind; (2) water; and (3) concurrent action of wind and water.

1.    Wind

Wind damage both to a dwelling and to personal property is a peril insured against under Section I, clause 2 (the "wind-damages clause"), which along with pertinent prefatory language states:

Coverage A – Dwelling and

2

Coverage B – Other Structures
( . . . )
Coverage C – Personal Property
We cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I – Property Exclusions:
( . . . )
    2. windstorm or hail.
    Direct loss caused by rain . . . driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. . . .

The policy thus covers losses caused by rain blown through a hole in a roof, wall, or window. Exclusively wind-related damage, like a blown-off roof, or a window damaged by a wind-propelled projectile, is also covered.

    2. Water

Like most homeowner's policies, the Leonards' policy unambiguously excludes damage caused by water – including flooding – in a broadly worded exemption clause (the "water-damages exclusion"):

Property Exclusions
(Section I)
( . . . )
    (b) Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly, to cause the loss. Water and water-borne material damage means:
        1. flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind. . . .

When the Leonards annually renewed their policy, they received the following notice from Nationwide informing them that flood losses would not be covered, but that additional flood coverage was available upon request:

> IMPORTANT INFORMATION
> A Message From Your Nationwide Agent:
> Your policy does not cover flood loss. You can get protection through the National Flood Insurance Program.  If you wish to find out more about this protection, please contact your Nationwide Agent.

The Leonards never purchased additional flood coverage under the federally subsidized National Flood Insurance Program ("NFIP").  See 42 U.S.C. §§ 4001-4027.

### 3.    Concurrent Action by Wind and Water

The prefatory language introducing the water-damages exclusion addresses situations in which damage arises from the synergistic action of a covered peril, e.g., wind, and an excluded peril, e.g., water:

> 1.    We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss. . . .

Commonly referred to as an "anticoncurrent-causation clause," or "ACC clause," this prefatory language denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property.  The inundation of the Leonards' home was caused by a concurrently caused peril, i.e., a tidal wave, or storm surge — essentially a massive wall of water — pushed ashore by Hurricane Katrina's winds.  Accordingly, argues Nationwide, losses attributable to storm surge-induced flooding are excluded under the ACC clause.  The validity of the ACC clause is the key interpretive battleground of this appeal.

### B.    Paul Leonard's Conversations with Fletcher

Paul Leonard testified that when he first bought his policy in 1989, he asked Nationwide's agent Jay Fletcher whether the Nationwide policy covered hurricane-related losses.  According to Leonard, Fletcher responded that all

4

hurricane damage was covered. Fletcher stated in his deposition testimony that he did not recall this conversation; the district court deemed it irrelevant to the case.

Leonard claims he spoke again with Fletcher ten years later to discuss a proposed increase in the wind/hail deductible that Nationwide was instituting on its homeowner's policies. Leonard called Fletcher after seeing advertisements for additional NFIP coverage in the wake of Hurricane Georges, which struck the Mississippi coast in 1998. Fletcher allegedly assured Leonard that he did not need additional flood coverage because Leonard did not live in an area classified Zone A for flood risk by the Federal Emergency Management Agency ("FEMA"). Fletcher purportedly added that his own property was not insured under the NFIP. Leonard does not allege that Fletcher told him the Nationwide policy covered flooding caused by a hurricane; Leonard merely inferred from Fletcher's comments that such coverage existed.

At the bench trial, the district court admitted under Federal Rule of Evidence 406 what it characterized as evidence that Fletcher "as a matter of habit and routine, expressed his opinion . . . that customers [in Pascagoula] should not purchase flood insurance unless they lived in a flood prone area (Flood Zone A) where flood insurance was required in connection with mortgage loans." Leonard v. Nationwide Mut. Ins. Co., 438 F. Supp. 2d 684, 690 (S.D. Miss. 2006). Trial evidence demonstrated that between 2001 and Katrina's landfall in late August 2005, Fletcher sold approximately one hundred eighty-seven NFIP policies to Pascagoula-area customers, twelve of whom lived in the Leonards' waterfront neighborhood.

C.     Hurricane Damage

Inspection of the Leonards' residence following the storm revealed modest wind damage.  The roof suffered broken shingles and loss of ceramic granules, but its water-tight integrity was not compromised.  The non-load-bearing walls of the garage and the garage door were severely damaged; doors in the house and garage had been blown open.  Finally, a "golf-ball sized" hole in a ground-floor window was likely caused by a wind-driven projectile.

Water damage, in contrast, was extensive.  The Leonards' neighborhood had suffered a seventeen-foot storm surge, causing the entire ground floor of their residence to become inundated under five feet of water blown ashore from the Mississippi Sound.  Walls, floors, fixtures, and personal property sustained extensive damage.  The second floor of the house remained unscathed.

Nationwide's adjuster evaluated the storm damage and, after applying the Leonards' five hundred dollar deductible, tendered a check for $1,661.17 – the amount determined attributable solely to wind.  Nationwide informed the Leonards that damages caused by water and the storm surge's concurrent wind-water action were barred, respectively, by the water-damages exclusion and the ACC clause.

At trial, the Leonards offered expert testimony that the total damages actually exceeded $130,000, but this figure did not apportion damages caused by different perils.  The Leonards' wind-specific assessment claimed $47,365.41, including costs for roof replacement and structural repairs to the garage.

D.     Procedural History

Before trial, Nationwide moved for partial summary judgment, arguing that: (1) the ACC clause and water-damages exclusion unambiguously precluded coverage for any damage not solely attributable to wind, and (2) Fletcher's

purported oral statements to Paul Leonard could not modify the policy's scope of coverage under Mississippi agency law. Additionally, Nationwide moved in limine to exclude evidence of any statements made by Fletcher to Nationwide policyholders other than the Leonards under Federal Evidence Rule 406. The district court carried Nationwide's motions with the case.

Following a bench trial, the district court entered judgment for the Leonards in the amount of $1,228.16 — damage determined to have been caused solely by wind. The court held that the water-damages exclusion was enforceable and precluded coverage for any damages occasioned by water. See Leonard, 438 F. Supp. 2d at 693, 696. Significantly, however, the court struck down the ACC clause as ambiguous and unenforceable: "Under applicable Mississippi law, in a situation such as this, where the insured property sustains damage from both wind (a covered loss) and water (an excluded loss), the insured may recover that portion of the loss which he can prove to have been caused by wind." Id. at 695 (citation omitted). The district court maintained that wind damage was recoverable "even if [it] occurred concurrently or in sequence with the excluded water damage." Id. at 693 (emphasis added).

The court denied Nationwide's partial summary judgment motion regarding Fletcher's oral statements, but nonetheless held that Fletcher did not materially misrepresent the policy terms, nor did he "make any statements which could be reasonably understood to alter" the policy terms. Id. at 691-92.

Nationwide appeals. The Leonards cross-appealed, but they subsequently withdrew their cross-appeal.

## II.  Discussion

### A.    Appellate Jurisdiction

Shortly before this court was scheduled to hear oral argument, the Leonards moved to dismiss their cross-appeal and contended that, as a result, Nationwide's appeal must be dismissed for mootness and lack of standing.  They are incorrect.  Nationwide's appeal alone continues to present a live Article III controversy over which we are obliged to exercise appellate jurisdiction.  See 28 U.S.C. § 1291.

The Leonards' major premise is that the money judgment below represents the entirety of the ruling inflicted on Nationwide by the district court's decision.  Because Nationwide does not challenge the amount awarded, Nationwide "suffered no injury or prejudice at trial," and this appeal no longer presents a case or controversy.  Their minor premise is that the district court's dual findings that (1) the ACC clause is ambiguous and (2) an agent's negligent misrepresentations can be used to challenge the enforceability of the Nationwide policy are unappealable "dicta" which do not vest Nationwide with a cognizable Article III injury.

"Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom."  Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333, 100 S. Ct. 1166, 1171 (1980).  Although Roper's discussion of an aggrieved party's right to appeal occurred in the class-action context, its core holding in regard to standing obtains here:  If redressable on appeal, collateral injury inflicted by a lower court's ruling renders the injured party "aggrieved" for purposes of Article III.  Even the Roper dissenters recognized the fundamental principle that a party may appeal any aspect of a

generally favorable judgment that affects him adversely, so long as the party can satisfy the personal-interest requirement of Article III. See Roper, 445 U.S. at 345-46, 100 S. Ct. at 1178 (Powell, J., dissenting) (Article III jurisdiction on appeal requires a "personal stake in the outcome of an action").[1]

Based on Roper and Electrical Fittings, Nationwide retains its aggrieved party status with respect to the rulings on the ACC clause and the negligent misrepresentation issues. The district court left Nationwide with a ruling that: (1) invalidates a key provision of its homeowner's policy as a matter of Mississippi law; (2) superimposes an entirely different causal matrix for the determination of covered damages than the policy contemplated; and (3) allows the introduction of extrinsic oral statements to "clarify" the meaning of Nationwide's policy terms and potentially to affect the coverage available. It stretches credulity to suggest that these rulings, which were integral to the district court's decisionmaking process, do not adversely affect Nationwide's rights or render it an aggrieved party in this appeal.

The district court found the ACC clause ambiguous, leading it to conclude: "Thus, [the ACC] language does not exclude coverage for different damage, the damage caused by wind, a covered peril, even if the wind damage occurred concurrently or in sequence with the excluded water damage. The wind damage is covered; the water damage is not." See Leonard, 438 F. Supp. 2d at 693. The

---

[1] The Court reached the same conclusion outside the class-action context in Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S. Ct. 860 (1939), when it held that collateral issues litigated below are appealable if they have the potential to affect rights of a party in future litigation. See id. at 242, 59 S. Ct. at 860-61 (prevailing party in patent dispute entitled to appeal collateral ruling on the validity of a patent claim). The Supreme Court reversed the Court of Appeals' decision that the threat of collateral estoppel in subsequent suits did not render the appellant a sufficiently "aggrieved party" within the meaning of Article III. See id.; Roper, 445 U.S. at 334, 100 S. Ct. at 1172.

court applied "established Mississippi law" dating from the Hurricane Camille cases and explicitly held that a Mississippi policyholder could parse out and recover for loss due to covered wind damage that combined with excluded water damage in a concurrently caused peril. Consequently, as a matter of Mississippi law, Nationwide's ACC clause is invalid. That such rulings vitally affect Nationwide's rights in subsequent litigation involving its homeowner's policy would seem to be emphasized by the Leonards' determination to render the rulings unassailable on appeal.

The district court's resolution of factual concurrent causation, as of the negligent misrepresentation issue, did not affect the damages Nationwide must pay in this case, but that is immaterial for purposes of the Article III standing inquiry we undertake here. "A party may be aggrieved by a district court decision that adversely affects its legal rights or position vis-à-vis other parties in the case or other potential litigants." Custer v. Sweeney, 89 F.3d 1156, 1164 (4th Cir. 1996).[2] The ACC clause and negligent misrepresentation issues are currently being litigated by Nationwide in hundreds of cases in the trial courts,

---

[2] And although not discussed by the Fourth Circuit in Custer, "other potential litigants" of course pose a Damoclean threat to the party aggrieved by collateral rulings because of the potential for the offensive use of nonmutual collateral estoppel in future litigation. See AT&T Corp. v. FCC, 317 F.3d 227, 237-38 (D.C. Cir. 2003) (finding standing on the basis of collateral estoppel and holding that AT&T had an Article III stake sufficient to support appeal of a ruling that it was liable for termination of certain access charges but not required to make payments); WorldCom, Inc. v. FCC, 246 F.3d 690, 695-96 (D.C. Cir. 2001) (commenting that although petitioner favored the ultimate result reached by FCC, it may have standing to challenge an unfavorable ruling because of the effect on its future legal rights). The instant case is distinguishable from those in which parties appealed issues that had no effect on liability and that would not have preclusive effect in subsequent litigation. See, e.g., ASARCO, Inc. v. Secretary of Labor, 206 F.3d 720, 723-24 (6th Cir. 2000) (finding that prevailing party was not aggrieved by administrative body's ruling because it posed no threat of preclusive effect in future litigation); Sea-Land Serv., Inc. v. Dep't of Transp., 137 F.3d 640 (D.C. Cir. 1998); Bath Iron Works Corp. v. Coulombe, 888 F.2d 179 (1st Cir. 1989).

causing Nationwide to incur considerable litigation expense and potential enormous liability to other policyholders. The threat of additional claims for bad-faith denial of coverage based on the court's rulings in this case also looms large for Nationwide. In sum, the district court's resolution of both the ACC clause and negligent misrepresentation issues renders Nationwide sufficiently aggrieved by the judgment below that it retains a stake in appealing the district court's damages methodology, as well as the collateral issue of the validity of Nationwide's homeowner's policy in the presence of allegedly contradictory oral representations by its agents.

B.     Standard of Review

The interpretation of an insurance policy, like any contract, is a legal question reviewed de novo, Welborn v. State Farm Mut. Auto. Ins. Co., 480 F.3d 685, 687 (5th Cir. 2007) (per curiam), as is its denial of Nationwide's partial summary judgment motion on the negligent misrepresentation claim. Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 879 (5th Cir. 2004). Factual findings are upheld on appeal unless clearly erroneous. Provident Life & Accident Ins. Co. v. Sharpless, 534 F.3d 634, 641 (5th Cir. 2004). Evidentiary rulings are reviewed for abuse of discretion. Hodges v. Mack Trucks Inc., 474 F.3d 188, 194 (5th Cir. 2006).

C.     General Principles of Mississippi Insurance Law

"The initial question of whether the contract is ambiguous is a matter of law." Benchmark Health Care Ctr., Inc. v. Cain, 912 So. 2d 175, 182 (Miss. 2005) (citation omitted). Mississippi courts give effect to the plain meaning of an insurance policy's clear and unambiguous language. Robley v. Blue Cross/Blue Shield of Miss., 935 So. 2d 990, 996 (Miss. 2006). "No rule of construction

11

requires or permits [Mississippi courts] to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear." State Auto. Mut. Ins. Co. of Columbus v. Glover, 176 So. 2d 256, 258 (Miss. 1965). Nor will a court resort to extrinsic evidence or rules of contract construction if policy provisions are unambiguous. Jackson v. Daley, 739 So. 2d 1031, 1041 (Miss. 1999).

If a court determines that ambiguity inheres in the policy language, the familiar maxim omnia praesumuntur contra proferentem requires the court to construe ambiguous terms in favor of the policyholder. J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 550, 552 (Miss. 1998). Ambiguity arises when a term or provision is susceptible to more than one reasonable meaning, but can also result from "internal conflict" between policy provisions that renders uncertain the meaning of the policy as a whole. See Miss. Farm Bureau Mut. Ins. Co. v. Walters, 908 So. 2d 765, 769 (Miss. 2005). The court must then select the interpretation "which gives the greater indemnity to the insured." State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So. 2d 1371, 1372 (Miss. 1981). Nonetheless, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So. 2d 400, 404 (Miss. 1997) (citing Cherry v. Anthony, Gibbs, Sage, 501 So. 2d 416, 419 (Miss. 1987)).[3]

The burden of proving that coverage exists for a peril under an insurance policy rests with the policyholder. Lunday v. Lititz Mut. Ins. Co., 276 So. 2d 696,

---

[3] Nor does disagreement among courts necessarily indicate ambiguity. See Wooten v. Miss. Farm Bureau Ins. Co., 924 So. 2d 519, 520-521 (Miss. 2006) (rejecting contention that differing judicial interpretation of the phrase "incurred within one year from the date of the accident" rendered the policy language ambiguous).

698 (Miss. 1973). The insurer bears the burden of proving that a particular peril falls within a policy exclusion; the insurer must plead and prove the applicability of an exclusion as an affirmative defense. Commercial Union Ins. Co. v. Byrne, 248 So. 2d 777, 782 (Miss. 1971). Mississippi courts strictly construe policy exclusions against the insurer. Scitzs, 394 So. 2d at 1372-73.

D.    The Anti-Concurrent Causation Clause

Although the district court granted the Leonards only a meager monetary recovery for losses proven to have been caused by wind, it also summarily invalidated the ACC clause, stating that "[t]he provisions of the Nationwide policy that purport to exclude coverage entirely for damages caused by a combination of the effects of water (an excluded loss) and damage caused by the effects of wind (a covered loss) are ambiguous." Leonard, 438 F. Supp. 2d at 693.[4] Contrary to the district court's ruling, Nationwide's ACC clause is not ambiguous, nor does Mississippi law preempt the causation regime the clause applies to hurricane claims.

> Eschewing a text-based analysis, the district court opines that the clause does not affect the coverage for other losses (covered losses), i.e., damage caused by wind, that occur at or near the same time. Thus, [the ACC clause] does not exclude coverage for different damage, the damage caused by wind, a covered peril, <u>even if the wind damage occurred concurrently or in sequence with the excluded water damage</u>. The wind damage is covered; the water damage is not.

Id. at 693 (emphasis added). This conclusion is unjustifiable when read against the clause's plain language:

---

[4] The second provision to which the court alludes – the weather-conditions clause – is discussed in Section III.E.

1. We do not cover loss to any property resulting directly or indirectly from any of the following. <u>Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss</u>.
( . . . )
   2. Water or damage caused by water-borne material. . . .
      (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, <u>whether or not driven by wind</u>.

The clause unambiguously excludes coverage for water damage "even if another peril" – e.g., wind – "contributed concurrently or in any sequence to cause the loss." The plain language of the policy leaves the district court no interpretive leeway to conclude that recovery can be obtained for wind damage that "occurred concurrently or in sequence with the excluded water damage." Leonard, 438 F. Supp. 2d at 693. Moreover, in the past we have not deemed similar policy language ambiguous. See, e.g., Arjen Motor Hotel Corp. v. Gen. Accident Fire & Life Assurance Corp., 379 F.2d 265, 268 (5th Cir. 1967) (affirming denial of recovery when evidence "conclusively establish[ed] that wave action, an excluded peril, at the very least contributed to the collapse of the restaurant building"). Nationwide's assertion that the district court "simply read the clause out of the contract," is not at all wide of the mark. The clause is not ambiguous.

The fatal flaw in the district court's rationale is its failure to recognize the three discrete categories of damage at issue in this litigation: (1) damage caused exclusively by wind; (2) damage caused exclusively by water; and (3) damage caused by wind "concurrently or in any sequence" with water. The classic example of such a concurrent wind-water peril is the storm-surge flooding that follows on the heels of a hurricane's landfall. The only species of damage covered under the policy is damage caused <u>exclusively</u> by wind. But if wind and water

14

synergistically caused the same damage, such damage is excluded. Thus, the Leonards' money judgment was based on their roof damages solely caused by wind. Contrary to the court's damage matrix, however, had they also proved that a portion of their property damage was caused by the concurrent or sequential action of water – or any number of other enumerated water-borne perils – the policy clearly disallows recovery.

The district court seemed to fear that enforcement of the policy's concurrent causation exclusion would render any recovery for hurricane damage illusory. Observing that the policy denies coverage whenever a "windstorm[] combined with an excluded cause of loss, e.g., flooding," the court hypothesized that "an insured whose dwelling lost its roof in high winds and at the same time suffered an incursion of even an inch of water could recover nothing. . . ." Leonard, 438 F. Supp. 2d at 694 (discussing the weather-conditions exclusion). That fear is unfounded, with regard to the policy's wind-coverage clause, which clearly preempts the court's scenario:

> We cover accidental direct physical loss to property . . . caused by the following perils . . .
> ( . . . )
> 2.    windstorm or hail.
>       <u>Direct loss caused by rain . . . driven through roof or wall openings made by direct action of wind. . . .</u>

If, for example, a policyholder's roof is blown off in a storm, and rain enters through the opening, the damage is covered. Only if storm-surge flooding – an excluded peril – then inundates the same area that the rain damaged is the ensuing loss excluded because the loss was caused concurrently or in sequence by the action of a covered and an excluded peril. The district court's unsupported conclusions that the ACC clause is ambiguous and that the policyholder can

parse out the portion of the concurrently caused damage that is attributable to wind contradict the policy language.

Like the district court, the Leonards provide no support for their argument that the ACC clause is ambiguous. Instead, they adopt the district court's reliance on venerable Mississippi authorities regarding proximate causation of damage caused by hurricanes. See Leonard, 438 F. Supp. 2d at 695 (citing cases reflecting "well-established Mississippi law"). Because the ACC clause is unambiguous, the Leonards can prevail only if they can demonstrate that the clause is prohibited by Mississippi caselaw, statutory law, or public policy. None of these sources of state law restricts Nationwide's use of the ACC clause to preclude recovery for concurrently caused hurricane losses.

1.    Caselaw

Contrary to the Leonards' contention, Mississippi courts have not conclusively resolved whether an insurance policy may preclude recovery for damages caused by the concurrent action of the wind and water of a hurricane. Accordingly, this court, applying state substantive law, must make an educated "Erie guess" as to how the Mississippi Supreme Court would resolve the issue. See Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 397 (5th Cir. 1986) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)).

a.    Mississippi's Default Rule: Efficient Proximate Causation

The default causation rule in Mississippi regarding damages caused concurrently by a covered and an excluded peril under an insurance policy is that the insured may recover if the covered peril was the "dominant and efficient cause" of the loss. Evana Plantation, Inc. v. Yorkshire Ins. Co., 58 So. 2d 797, 798 (Miss. 1952). This rule is typically referred to as the doctrine of efficient

16

proximate cause.[5]  To recover under the doctrine in the context of a homeowner's policy that covers wind damage but excludes damage by water, "it is sufficient to show that wind [i.e., the covered peril] was the proximate or efficient cause of the loss . . . notwithstanding other factors [i.e., excluded perils like water] contributed. . . ."  Lititz Mut. Ins. Co. v. Boatner, 254 So. 2d 765, 767 (Miss. 1971) (quoting Kemp v. Am. Universal Ins. Co., 391 F.2d 533, 535 (5th Cir. 1968)).

The Mississippi Supreme Court frequently employed this default rule in the welter of insurance coverage cases that surfaced in the aftermath of Hurricane Camille.  It is also the rule the district court and the Leonards contend must apply here.  See Leonard, 438 F. Supp. 2d at 694 (collecting cases).  However, although the Mississippi Supreme Court often premised recovery for policyholders on the application of the efficient proximate cause rule, in actuality, in many of the Camille cases the court did little more than uphold jury findings that the damages suffered by policyholders were caused <u>exclusively by wind</u>, not

---

[5] See In re Katrina Canal Breaches Litig., __F.3d__, 2007 WL 2200004, at *26 (5th Cir. Aug. 2, 2007) ("The efficient-proximate-cause doctrine applies only where two or more distinct actions, events, or forces combined to create the loss.") (citation omitted); JEFFREY JACKSON, MISSISSIPPI INSURANCE LAW AND PRACTICE § 15:14 (2007) [hereinafter MISS. INS. LAW & PRAC.]; 7 STEVEN PLITT ET AL., COUCH ON INSURANCE § 101:45 (3d ed. 2006) (defining the efficient proximate cause of loss as "the fundamental, efficient moving cause, i.e., the cause that is responsible for setting any and all other causes in motion") [hereinafter COUCH ON INS.]; id. § 101:55 ("The efficient proximate cause rule permits recovery under the insurance policy for a loss caused by a combination of a covered risk and an excluded risk only if the covered risk . . . is one that sets the other causes in motion that, in an unbroken sequence, produced the result for which recovery is sought.").  Efficient proximate causation is distinct from two other etiological doctrines occasionally employed in the insurance context: independent and concurrent causation.  See, e.g., id. § 101:49 ("When a loss is due to two or more independent concurrent causes, one covered under the policy and the other expressly excluded, an insurer is only liable for that part of the loss that is a covered loss under the terms of the policy."); id. § 101:55 (The "[c]oncurrent cause rule takes the approach that coverage should be permitted whenever two or more causes do appreciably contribute to the loss and at least one of the causes is a risk which is covered under the terms of the policy.").

by concurrent wind-water action.[6] Such cases thus do not support the Leonards' argument that the Mississippi default rule in hurricane cases is always to allow recovery for covered damages even if they are concurrent with excluded damages and irrespective of contrary policy language. In fact, the Mississippi Supreme Court intimated in one case that even if a covered peril is the efficient proximate cause of damage, a concurrently contributing cause that is excluded under a homeowner's policy may preclude recovery. See Grain Dealers Mut. Ins. Co. v. Belk, 269 So. 2d 637, 640 (Miss. 1972).

Whatever the effect of the efficient proximate cause doctrine in the Hurricane Camille cases, those decisions do not control the current case because none of the policies they involve contain ACC clauses similar to the one at issue here,[7] nor do those cases purport to enshrine efficient proximate causation as an

---

[6] See, e.g., Liberty Universal Ins. Co. v. Hall, 289 So. 2d 683, 684 (Miss. 1972) ("This is simply another one of the many cases which reached this Court involving the question of whether the damage was caused by wind or water. The evidence on behalf of the appellees tended to show that the damage was caused by the wind before the water even reached the appellees' property. . . . There was no tidal wave."); Lititz Mut. Ins. Co. v. Buckley, 261 So. 2d 492, 495 (Miss. 1972) ("[D]amages to the house and personal property were caused by wind and rain before the rising water."); Grace v. Lititz Mut. Ins. Co., 257 So. 2d 217, 224 (Miss. 1972) ("[T]he jury had ample testimony to sustain the appellants' contention that their office building was destroyed by wind before the tidal waters reached the property."); Lititz Mut. Ins. Co. v. Boatner, 254 So. 2d 765, 766 (Miss. 1971) ("[T]he great weight of the evidence shows that the house and its contents had already been destroyed and distributed over a large area long before the tidal wave came ashore. . . ."); Commercial Union Ins. Co. v. Byrne, 248 So. 2d 777, 781 (Miss. 1971) (damages from rising water, an excluded cause, not covered). See also Firemen's Ins. Co. of Newark, New Jersey v. Schulte, 200 So. 2d 440, 442-43 (Miss. 1967) (refusing to set aside jury verdict that the dominant cause of damage was wind from Hurricane Betsy, not her tidal waters).

[7] Insurers developed ACC clauses specifically in response to court decisions that applied the efficient proximate cause doctrine to resolve thorny issues of policy coverage for concurrently caused perils. See 7 COUCH ON INS. § 101:57 ("Insurers often change the terms of their policies in periodic attempts to negate the effect of the case law regarding multiple causation set forth by various jurisdictions which may have resulted from the prior terms

18

immutable rule of Mississippi insurance policy interpretation. The Fifth Circuit long ago explicitly recognized that efficient proximate causation does not necessarily control Mississippi contracts for hurricane damage. See Kemp, 391 F.2d at 534-35 ("[I]n order to recover on a windstorm insurance policy, <u>not otherwise limited or defined</u>, it is sufficient to show that wind was the proximate or efficient cause of loss or damage. . . ." (emphasis added)). As discussed below, we reach the same conclusion here as well.

> b.  The Earth-Movement Cases: Eaker, Rhoden & Boteler

Recent decisions involving the effect of ACC clauses and earth-movement exclusions under Mississippi law all upheld ACC clauses that abrogated the default efficient proximate causation rule and excluded damage occasioned by the synergistic action of a covered and an excluded peril.[8]  The cases reflect the general Mississippi contract principle that "where a clause in a contract does not violate any statute, or public policy, and is unambiguous and certain in its provisions, it is enforced as written." Am. Bankers' Ins. Co. v. White, 158 So. 346, 349 (Miss. 1935); see also Blue Cross & Blue Shield of Miss., Inc. v. Larson, 485 So. 2d 1071, 1073 (Miss. 1986) (explaining parties' "privileged right . . . to

---

employed by insurers in their policies."); Preferred Mut. Ins. Co. v. Meggison, 53 F. Supp. 2d 139, 142 (D. Mass. 1999) (ACC provisions have appeared in recent years in response to concurrent-causation doctrine, under which courts have found insurers "obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril." (citation omitted)); Garvey v. State Farm Fire & Cas. Co., 770 P.2d 704, 710 n.6 (Cal. 1989) (Homeowners' policy language changed because court decisions found coverage for losses not intended to be covered, threatening insurer insolvency in the event of a major catastrophe.).

[8] See, e.g., Eaker v. State Farm Fire & Cas. Ins. Co., 216 F. Supp. 2d 606 (S.D. Miss. 2001); Rhoden v. State Farm Fire & Cas. Co., 32 F. Supp. 2d 907 (S.D. Miss. 1998); Boteler v. State Farm Cas. Ins. Co., 876 So. 2d 1067 (Miss. Ct. App. 2004).

contract, assuming such is not against public policy, by expressing their intentions through the language of their choice"); 7 COUCH ON INS. § 101:39; MISS. INS. LAW & PRAC. § 1:11.

Rhoden and Boteler are particularly instructive on this score. In Rhoden, State Farm excluded losses from earth movement (the excluded peril) under an ACC provision that barred coverage "whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." 32 F. Supp. 2d at 911. The federal district court held that the earth-movement exclusion, when read with the ACC provision, was unambiguously designed to preclude recovery for any loss involving earth movement, irrespective of the causal matrix that occasioned the loss. Id. at 912-13. The court upheld the ACC clause, noting that Mississippi courts have not adopted the efficient proximate causation doctrine. Id. at 912; Boteler, 876 So. 2d at 1070. Boteler and Eaker echo Rhoden's holding that ACC clauses are enforceable, absolute bars to recovery "[w]hen a loss is caused by a combination of a covered and specifically excluded risks." See Eaker, 216 F. Supp. 2d at 623 (quoting Rhoden, 32 F. Supp. 2d at 911); see also Boteler, 876 So. 2d at 1069-70.[9] The leading Mississippi insurance law treatise states that the earth-movement cases are indicative of "the clear trend in Mississippi state and federal courts . . . to treat the issue of causation in this context as one

---

[9] In Guice v. State Farm Fire & Casualty Co., 2006 WL 2359474 (S.D. Miss. Aug. 14, 2006), a Katrina coverage case involving a concurrent-causation provision that was before the district court on a Rule 12(b)(6) motion, the court distinguished Eaker, Rhoden, and Boteler on the basis that "the records in [the earth-movement] cases showed that the losses would not have occurred in the absence of the excluded event." Id. at *4. It is undisputed that the lion's share of the losses to the Leonards' property would not have occurred but for the storm-surge damage, a fact that reinforces the application of the earth-movement cases as persuasive authority here.

controlled by the insurance policy, and not by public policy or common law." MISS. INS. LAW & PRAC. § 15:15.

> c.    Other Jurisdictions

Two federal appellate courts and many state and district courts have endorsed using ACC clauses to circumvent default causation rules like efficient proximate cause.  For instance, in TNT Speed & Sport Center, Inc. v. American States Insurance Co., 114 F.3d 731 (8th Cir. 1997), a vandal removed sandbags from a levee protecting a go-cart track from the waters of the Mississippi River. As a result, the levee collapsed and river water damaged TNT's buildings.  The insurance policy covered losses caused by vandalism, but excluded flood losses, and contained an ACC clause that excluded coverage for damage arising concurrently from a covered and an excluded peril.  After a review of Missouri cases, the Eighth Circuit held that state law did not bar application of the ACC clause, and that the "plain meaning of the [ACC clause's] exclusionary language was to directly address, and contract out of, the efficient proximate cause doctrine."  114 F.3d at 733; see id. (collecting state supreme court decisions upholding ACC clauses).  See also Front Row Theatre, Inc. v. Am. Mfrs. Mut. Ins. Co., 18 F.3d 1343, 1347 (6th Cir. 1994) (upholding an ACC clause barring coverage for concurrently caused water losses (citing Schroeder v. State Farm Fire & Cas. Co., 770 F. Supp. 558, 561 (D. Nev. 1991))).  A majority of states that have considered the matter enforce ACC exclusion clauses.  See 4 DAVID L. LEITNER ET AL., LAW AND PRACTICE OF INSURANCE COVERAGE LITIGATION § 52:37 (2007); 7 COUCH ON INS. § 101:45; Joseph A. Ziemianski et al., Emerging Property and CGL Insurance Claims Trends, 742 Practising Law Institute Litigation and Administrative Practice Course Handbook Series 251, 281 & n.111 (2006).  Only

21

Washington and West Virginia do not allow abrogation of the default rule via an ACC clause.[10] California and North Dakota require efficient proximate causation by statute.[11]

  2. Public Policy

A general background principle of Mississippi contract law holds that parties may decline to adopt common-law causation rules so long as the contract's provisions do not offend public policy. See Miss. Farm Bureau Cas. Ins. Co. v. Britt, 826 So. 2d 1261, 1266 (Miss. 2002) ("We must give effect here to [a] valid, clear and unambiguous contract term where there is no statutory or public policy prohibition nullifying it."); see also 7 COUCH ON INS. § 101:39. As Mississippi has not adopted the efficient proximate cause doctrine as a matter of public policy, there is no bar to Nationwide's use of the ACC clause here. Most jurisdictions concur that ACC clauses comport with state public policy. The Alabama Supreme Court's recent decision in State Farm Fire & Casualty Co. v. Slade, 747 So. 2d 293 (Ala. 1999), is representative of this trend.

Slade involved an improbable set of events in which a lightning bolt caused the collapse of a retaining wall near the policyholders' swimming pool. Months

---

[10] See Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1, 12 (W. Va. 1998) ("We hold that, when examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss."); Safeco Ins. Co. of Am. v. Hirschmann, 773 P.2d 413, 416-17 (Wash. 1989) ("When an insured risk sets into operation a chain of causation in which the last step may be an excluded risk, the exclusion will not defeat recovery.").

[11] See Julian v. Hartford Underwriters Ins. Co., 110 P.3d 903, 904 (Cal. 2005) ("We have construed [CAL. INS. CODE] section 530 as incorporating into California law the efficient proximate cause doctrine, an interpretive rule for first party insurance."); Western Nat'l Mut. Ins. Co. v. Univ. of N.D., 643 N.W.2d 4, 13 (N.D. 2002) (efficient proximate cause doctrine codified at N.D. CENT. CODE §§ 26.1-32-01, 26.1-32-03).

later, cracks were observed in the interior and exterior walls of the adjacent dwelling. State Farm refused to cover the structural damage, asserting that lightning (a covered peril), caused subsequent earth movement (an excluded peril), resulting in the observed damage. The homeowner's policy contained an ACC clause substantively indistinguishable from the one contested here. Slade held that the occasional citation of the efficient proximate cause rule in Alabama caselaw did not require the court to invalidate the disputed ACC clause because the rule is not a "principle of public policy." 747 So. 2d at 314. Instead, the court adhered to Alabama's "long-standing rule against rewriting unambiguous insurance policies so long as they do not . . . contravene public policy." Id. (citation and internal quotation marks omitted). As Eaker, Rhoden, and Boteler suggest, we believe that the Mississippi Supreme Court, if squarely confronted with the issue, would follow Slade.

3.    Statutory Law

Nor does any Mississippi statute mandate that insurance policies reflect the efficient proximate causation doctrine. Mississippi insurance law, in fact, lends some support to Nationwide. Under state law, all insurance providers are required to file "all rates, supplementary rate information, policy forms and endorsements" with the Mississippi Department of Insurance. See MISS. CODE ANN. § 83-2-7(1). The state Insurance Commissioner must reject any rate or policy form that contains "inconsistent, ambiguous, or misleading clauses or exceptions." Id. § 83-2-11(1)(b). Nationwide's ACC clause was approved by the Department.

The Mississippi Supreme Court has recently noted the public-policy import of this approval process. See United States Fid. & Guar. Co. v. Knight, 882 So.

23

2d 85, 92 (Miss. 2004) ("[I]nsurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated."); see also 7 COUCH ON INS. § 101:54 ("Causes that fall within the policy coverage may be considered to be those that the insurer has assessed in setting its premium or that the insured would have derived from the language of the contract."). Moreover, the judicial elevation of the efficient proximate cause doctrine to a rule of contract construction after contrary policies had been approved by the state insurance commissioner would essentially usurp the legislature's authority to delegate authority to an agency. See Slade, 747 So. 2d at 314. By analogy, it seems most likely that the Mississippi Supreme Court would regard insurance policy regulation as a matter "better suited for the Legislature to address" rather than the state judiciary. Wooten v. Miss. Farm Bureau Ins. Co., 924 So. 2d 519, 523 (Miss. 2006).

The Leonards object to Nationwide's citation of the filed-rate doctrine, contending that it "has never been held to be an absolute bar to litigation" and would constitute "an encroachment by regulatory agencies into the court system and would deprive plaintiffs of their right to a trial by jury." This argument assumes that the insurance policy is ambiguous, since Mississippi courts will refrain from tinkering with policy language if the meaning of a policy is clear on its face. See State Auto. Mut. Ins. Co. of Columbus v. Glover, 176 So. 2d 256, 258 (Miss. 1965). Since the ACC clause is unambiguous and consistent with state public policy, the Leonards' argument misses the mark.

For all these reasons, we conclude that use of an ACC clause to supplant the default causation regime is not forbidden by Mississippi caselaw (including

the Camille cases which antedate such clauses), statutory law, or public policy. Because the ACC clause is unambiguous and not otherwise voidable under state law, it must stand.

E.    Water-Damages Exclusion

The Leonards' only textual argument that their policy is ambiguous focuses on the water-damage exclusion, not the ACC clause. They assert that the water damage their house sustained was caused not by flooding – an explicitly excluded peril – but by "storm surge," which they characterize as a "separate, discrete peril unique to hurricanes" and as a term commonly understood "among residents of Pascagoula" as distinct from a flood.[12] Thus, the argument goes, because "[t]he literal wording of the 'water damage' exclusion does not contemplate the exclusion of [damage from] 'storm surge,'" recovery is available. See 11 COUCH ON INS. § 153:48 ("Because exclusions are read narrowly, a policy excluding damage from some natural water-related perils may cover damage from other natural water phenomena."). This argument is unpersuasive.

---

[12] The Leonards argue based on extrinsic evidence that "storm surge" has a special meaning apart from "flood" in hurricane-prone areas like Pascagoula. We need not opine on the merits of this claim because a policyholder cannot cite extrinsic evidence except to explain an ambiguity within the four corners of the policy. See Am. States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 555 (5th Cir. 1998); Heartsouth, PLLC v. Boyd, 865 So. 2d 1095, 1105 (Miss. 2003). Even so, the authority cited in support of the Leonards' proposition, Red Panther Chem. Co. v. Ins. Co. of Penn., 43 F.3d 514 (10th Cir. 1994), is less than convincing on this score. Red Panther applied Mississippi law to a set of Palsgrafian facts and a pollution exclusion clause. After a general invocation that insurance policies should be "construed in light of the circumstances in which they were issued and according to common usages," id. at 517, the Tenth Circuit held the exclusion ambiguous. The court specified, however, that its holding involved "unique factual circumstances" and a policy provision "not yet...the subject of extensive litigation." Id. at 519. In contrast, the instant water-damages clause is practically indistinguishable from provisions used in insurance policies for two centuries, and hurricane damage is anything but novel.

Courts have interpreted water-damage exclusions like the one found in the Leonards' policy to encompass the peril of wind-driven inundation by water, or storm surge, for ages.[13] Mississippi courts have upheld such exclusions before and after Hurricane Katrina. See Leonard, 438 F. Supp. 2d at 693 (collecting cases); Bilbe v. Belsom, 2007 WL 2042437, at *4 (E.D. La. July 12, 2007) (holding on the basis of a nearly-identical exclusion that "Plaintiff's argument that 'hurricane waters' or 'storm surge' do not fit within the terms set forth in the water damage exclusion is without merit. The damage to Plaintiff's home was caused by the inundation of her home by what was clearly tidal water from Lake Pontchartrain. . . .").[14] Further, this court's most recent consideration of the term "flood" also supports Nationwide's contention that the term is unambiguous and has a concrete meaning, whether or not used in the context of an insurance policy. See In re Katrina Canal Breaches Litigation, __F.3d__, 2007 WL 2200004,

---

[13] The Third Circuit rejected a strikingly similar storm-surge argument in 1916. See Newark Trust Co. v. Agric. Ins. Co., 237 F. 788, 788 (3d Cir. 1916) (holding that wind-driven storm surge was an excluded peril under a flood exclusion and rejecting policyholder's contention that because "the water was made high, not by normal tidal influences, but by wind, the element insured against, and that in driving the water against the foundations of the house, the water was the passive and the wind the efficient force which proximately caused its destruction"); see also Nat'l Fire Ins. Co. v. Crutchfield, 170 S.W. 187, 187-88 (Ky. 1914) (policy excluding "damage occasioned directly or indirectly by...tidal wave" interpreted to exclude "loss by water being driven by the wind during a flood," i.e., storm surge); Wotton Hotel Corp. v. N. Assurance Co., 57 F. Supp. 112, 113 (E.D. Pa. 1944) (water-damages exclusion precludes coverage for damage "caused by high water driven by wind").

[14] See also Buente v. Property & Cas. Ins. Co., 2006 WL 980784, at *1 (S.D. Miss. April 12, 2006) (finding that "[water-damage] exclusions are drawn quite broadly" and clearly include storm-surge damage); Tuepker v. State Farm Fire & Cas. Co., 2006 WL 1442489, at *3 (S.D. Miss. May 24, 2006) (unpublished) ("'storm surge' [losses] are excluded from coverage because this damage was caused by the inundation of plaintiffs' home by tidal water"); Russell G. Donaldson, What Is "Flood" Within Exclusionary Clause of Property Damage Policy, 78 A.L.R. 4th 817 § 2[a] (1990) (noting "little disagreement among the courts" that "storm tide" constitutes a flood).

at \*16-\*18 (5th Cir. Aug. 2, 2007) (considering the term in the context of water damage resulting from the "failure of a structure such as a dam or dike"). No decision of this court or any other of which we are aware endorses the Leonards' view that storm surge is a unique meteorological phenomenon not contemplated by water-damages exclusions like Nationwide's.

The provision explicitly exempts from coverage damage caused by "flood . . . waves, tidal waves, [and] overflow of a body of water . . . <u>whether or not driven by wind</u>." (Emphasis added). The phrase "storm surge" is little more than a synonym for a "tidal wave" or wind-driven flood, both of which are excluded perils.[15] The omission of the specific term "storm surge" does not create ambiguity in the policy regarding coverage available in a hurricane and does not entitle the Leonards to recovery for their flood-induced damages. See In re Katrina Canal Breaches Litig., __F.3d__, 2007 WL 2200004, at \*27 (5th Cir. Aug. 2, 2007) (stating in the context of an ACC clause that "an insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss." (citation omitted)); 7 COUCH ON INS. § 101:39.

---

[15] See, e.g., Webster's Third New International Dictionary 2390 (1976) (defining "tidal wave" as "an unusual rise of water alongshore due to exceptionally strong winds."); Federal Emergency Management Agency, Hurricane Hazards: Storm Surge, available at http://www.fema.gov/hazard/hurricane/hu_surge.shtm ("Storm surge is simply water that is pushed toward the shore by the force of the winds swirling around the storm. This advancing surge combines with the normal tides to create the hurricane storm tide. . . . This rise in water level can cause severe flooding in coastal areas."). Additionally, this Circuit has previously defined "flood" as "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be." Fla. E. Coast Ry. Co. v. United States, 519 F.2d 1184, 1192 (5th Cir. 1975); see also 11 Couch on Ins. § 153:54 (defining flood).

F.     Weather-Conditions Exclusion

Neither party briefed or argued the applicability of the weather-conditions exclusion[16] in the district court, nor has Nationwide alleged that the exclusion bars recovery.  The district court raised the issue sua sponte in its Memorandum Opinion, finding the provision ambiguous and unenforceable.  See Leonard, 438 F. Supp. 2d at 694.  Both parties agree that the district court exceeded the scope of the inquiry necessary to resolve this case by ruling on the weather-conditions exclusion.  We accordingly do not consider that provision and vacate that portion of the district court's opinion.

G.     Negligent Misrepresentation Claim

Finally, the Leonards claim that misrepresentations Fletcher made during two conversations in 1989 and 1999 effected an oral modification of their policy, enabling recovery for all Katrina-related losses.  The district court allowed litigation of the question whether Fletcher negligently misrepresented the policy's terms, but found that none of Fletcher's statements "could be reasonably understood to alter the terms of the Nationwide policy," and that any inferences that Paul Leonard drew from the conversations were inconsistent with the policy exclusion for water damage.  Leonard, 438 F. Supp. 2d at 692.

1.     Background Principles

Under Mississippi law, a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable. Ross v.

---

[16] The exclusion states in pertinent part:

(2)     We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

( . . . )

c.     Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

Citifinancial, Inc., 344 F.3d 458, 464 (5th Cir. 2003). The insured has an affirmative duty to read the policy. Smith v. Union Nat'l Life Ins. Co., 286 F. Supp. 2d 782, 788 (S.D. Miss. 2003); Gulf Guar. Life Ins. Co. v. Kelley, 389 So. 2d 920, 922 (Miss. 1980). Whether the policy was read or not, however, constructive knowledge of its contents is imputed to the policyholder. Ross, 344 F.3d at 464 (quoting Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So. 2d 1254, 1257 (Miss. 1991)). An agent's oral representations can modify the policy only if it is ambiguous; when the contractual language is plain, there can be no modification. Am. States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 555 (5th Cir. 1998).

General agency law controls the relationship between insurance companies and their agents. Barhonovich v. Am. Nat'l Ins. Co., 947 F.2d 775, 777 (5th Cir. 1991). Under Mississippi law, an agent's representations that purport to modify the insurance contract can bind an insurer only if the statements were made pursuant to actual or apparent authority. Id. Because Nationwide does not authorize its agents to orally modify contracts, only apparent authority is pertinent here.

Somewhat tautologically, the Mississippi Supreme Court has explained that "[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." Ford v. Lamar Life Ins. Co., 513 So. 2d 880, 888 (Miss. 1987). A policyholder seeking to recover based on an agent's apparent authority must show three things: (1) acts or conduct on the part of the principal indicating the agent's authority; (2) reasonable reliance on those acts;

and (3) a detrimental change in position as a result of such reliance. See Barhonovich, 947 F.2d at 778 (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1181 (Miss. 1990)). The insured is bound by policy language that would put a reasonable person on notice of limitations to the agent's authority. See Union Nat'l, 286 F. Supp. 2d at 788.

### 2. Fletcher's Conversations with Paul Leonard

Upon purchase of the policy in 1989, Paul Leonard alleges that Fletcher assured him that all hurricane damage was covered; in 1999, Fletcher allegedly assured Leonard that he did not need to purchase additional flood insurance. The Leonards argue that these oral misrepresentations modified their insurance coverage.

As a threshold matter, it is not at all clear whether the Leonards are proceeding under a tort or a contract theory. They contend in their opening brief that the district court failed to adjudicate their contractual "oral modification" claim. The Leonards pled, however, only "equitable fraud"[17] (Count Eight) and fraud claims sounding in tort (Counts Nine and Ten). The complaint contains no contract claims at all.

The Leonards attempt to obscure this discrepancy by explaining that the allegations of their detrimental reliance on Fletcher's statements, when coupled with their equitable estoppel claim (Count Two), amount to "what may more broadly be termed a claim based on 'oral modification' of an insurance contract." They argue this without ever intoning the word "oral" or "modification" in their pleadings. Even were we to credit this explanation, the Leonards' further

---

[17] The tort of "equitable fraud" differs from species of "legal fraud" like fraudulent or negligent misrepresentation only insofar as the equitable fraud lacks a scienter requirement. See Brown v. Ohman, 43 So. 2d 727, 744-45 (Miss. 1949).

allegation that the district court failed to adjudicate their modification claim is wrong: the court explicitly stated that "Fletcher did not materially misrepresent the terms of the Nationwide homeowners policy to the Leonards, and <u>Fletcher</u> did not make any statements which could be reasonably understood to alter the terms of the Nationwide policy." Leonard, 483 F. Supp. 2d at 691-92 (emphasis added). The oral modification claim was addressed and rejected, assuming it was ever presented in the first place. Nonetheless, whether they proceed under a misrepresentation theory or a contract-modification theory, the Leonards lose on both scores. The district court should never have considered the argument because Fletcher's statements are irrelevant to interpreting this policy as a matter of Mississippi insurance law.

3. Negligent Misrepresentation Theory

The Leonards fail to present an actionable claim of negligent misrepresentation because they cannot prove two of the elements required to show apparent authority. First, Nationwide's conduct in no way indicated that Fletcher was authorized to orally modify policies he sold. The Form HO-23-A has an integration clause specifically disclaiming the agent's ability to do so:

HOW YOUR POLICY MAY BE CHANGED
( . . . )
(c)    A waiver or change of a part of this policy must be in writing
       by use to be valid.  Our request for an appraisal or
       examination does not waive our rights.

Paul Leonard admits to having read the policy. Even had he not, knowledge of the integration clause is imputed to him under state law.[18] Only "[t]hose dealing

---

[18] The cases the Leonards cite in support of their claim are readily distinguishable from the instant facts. In Nichols v. Shelter Life Insurance Co., 923 F. 2d 1158, 1163 (5th Cir. 1991), the policy contained no express statement that the insurer disclaimed any representations made by an agent that were contrary to the written policy. Moreover, both

31

with agents without notice of restrictions upon the agent's authority have a right to presume that their authority is there." Hollins, 830 So. 2d at 1237 (citation omitted).

Second, the Leonards' reliance on Fletcher's statements was objectively unreasonable in light of the policy language clearly excluding water damage, including damage caused by a flood. See supra Section III.D.

And even if the Leonards can satisfy the third element of apparent authority – detrimental change in position – their misrepresentation claim is stale. The most recent statements the Leonards cite were uttered six years ago in 1999. The statute of limitations for negligent misrepresentation in Mississippi is three years. See MISS. CODE ANN. § 15-1-49. Because the policy terms are unambiguous, the Leonards' claim accrued at the time the misrepresentation was made. See Oaks v. Sellers, 953 So. 2d 1077, 1082 (Miss. 2007) (action for misrepresentation of policy terms accrues at execution); Carter v. Citigroup, Inc., 938 So. 2d 809, 818 (Miss. 2002); Watts v. Horace Mann Life Ins. Co., 949 So. 2d 833, 835-36 (Miss. Ct. App. 2006) (claim that ambiguous policy tolled statute of

---

Nichols and Scott v. Transport Indemnity Co., 513 So. 2d 889 (Miss. 1987), involve fraudulent inducement to sign new policies, not oral modifications of existing policies. Nichols, 923 So. 2d at 1160; Scott, 513 So. 2d at 894 (holding restricted to agent's statements "before or contemporaneous with entering into the insurance contract"). In Andrew Jackson Life Insurance Co. v. Williams, 566 So. 2d 1172, 1182 (Miss. 1990), "absolutely no oral or written notice of existent policy condition or breadth of agents' authority was provided [plaintiffs, who] . . . were not afforded an opportunity to become properly informed through inspection of sample policies, brochures, or anything, and discover that the agents' offers wrongfully contravened unrevealed policy conditions." (emphasis in original) (internal quotation marks omitted). And in American Income Life Insurance Co. v. Hollins, 830 So. 2d 1230, 1238 (Miss. 2002), the insured "was not given notice of the exclusion at the time of relying on the agent's misrepresentation." None of these cases supports the Leonards' argument that their misrepresentation claim survives notwithstanding the integration clause.

limitations rejected because policy language was plain). The claim is time-barred.

4.     Oral Modification Theory

There are at least two reasons why the Leonards' contract-based claim fails as well.  First, the policy's integration clause pretermits the claim as a matter of law.[19]  See Stephens v. Equitable Life Assurance Soc'y, 850 So. 2d 78, 83 (Miss. 2003) ("Any alleged oral agreement . . . does not have any effect on the written insurance contract. . . . [that] had a general provision that unambiguously prohibited any oral modification.").  The Leonards do not allege that the provision permitting only written modification of the policy has itself been modified.  See, e.g., Eastline Corp. v. Marion Apartments, Ltd., 524 So. 2d 582, 584 (Miss. 1988) (dispositive issue "whether or not the parties waived the stipulation that all modifications be in writing").[20]  Instead, they argue that their pleading of equitable estoppel obviates entirely the need to resort to the integration clause. That claim ignores the rule that doctrines like equitable estoppel that allow insureds to procure rights at variance with a written insurance policy cannot be used to extend coverage not otherwise provided by the policy.  See Kubow v. Hartford Cas. Ins. Co., 475 F.3d 672 (5th Cir. 2007); St. Paul Fire & Marine Ins.

---

[19] Although the parol evidence rule is not a bar to evidence of a subsequent contract modification, see Dixie S. Indus. Coating, Inc. v. Miss. Power Co., 872 So. 2d 769, 772 (Miss. Ct. App. 2004), the rule is activated only upon the discovery of ambiguity in a contract and is thus inapplicable here.  Smith v. Smith, 872 So. 2d 74, 78 (Miss. Ct. App. 2004) ("Parol evidence of the intention of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed." (quoting Byrd v. Rees, 251 Miss. 876, 882, 171 So. 2d 864, 867 (1965))).

[20] Although Eastline also states that "[a]n oral modification may be made even where the contract provides that modification must be in writing," 524 So. 2d at 584, that statement was supported by authority holding that "a course of dealing [between the parties] which repeatedly disregards such stipulation" may amount to waiver.  Id. (citation omitted).  That situation is not present here.

Co. v. Vest Transp. Co., 666 F.2d 932, 948 (5th Cir. 1982) ("[C]onditions going to coverage or scope of policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action."); Morris v. Am. Fidelity Fire Ins. Co., 173 So. 2d 618 (Miss. 1965).

Second, Mississippi law requires that oral modification correspond to general rules of contract formation, like the meeting-of-the-minds requirement. See, e.g., Rottenberry v. Hooker, 864 So. 2d 266, 270 (Miss. 2003). The Leonards do not contend that Fletcher said that the HO-23-A policy covered all hurricane damage; instead, they contend that Fletcher stated they did not need additional hurricane coverage because they did not live in an area classified Flood Zone A by FEMA. From this, Paul Leonard inferred that the policy covered hurricane damage. See Leonard, 438 F. Supp. 2d at 691. That inference does not provide the mutual assent necessary to modify the contract. The Leonards' additional claim that equitable estoppel does not require mutual assent is irrelevant because estoppel cannot operate to create hurricane coverage that does not exist under the policy.

Whether the Leonards proceed under a contract or tort claim, their allegation that Fletcher's comments entitle them to additional coverage is incorrect as a matter of Mississippi law, and requires us to reverse the district court's contrary holding.

5.      Fletcher's Conversations with Other Policyholders

In addition to the district court's error regarding claims based on statements made to the Leonards, the district court additionally abused its discretion in considering evidence of statements made by Fletcher to policyholders <u>other than</u> the Leonards. Over Nationwide's objection, the district

court admitted statements Fletcher made to five Nationwide policyholders as "habit" evidence under Federal Rule of Evidence 406 because "there was enough evidence . . . as a matter of habit and routine, [that Fletcher] expressed his opinion, when he was asked, that customers should not purchase flood insurance unless they lived in a flood prone area. . . ."  Leonard, 438 F. Supp. 2d at 690. Admission of the oral statements under Rule 406 was a clear abuse of discretion. The Leonards failed to respond to Nationwide's briefing on this issue.

Rule 406's use of the term "habit" suggests a "regular response to a repeated specific situation" that has become "semi-automatic."  Reyes v. Mo. Pac. R.R. Co., 589 F.2d 791, 794 (5th Cir. 1979); see also Pursley v. Dretke, 114 F.App'x 630, 634 (5th Cir. 2004) (unpublished) ("habit" means "a specific reaction to a specific set of stimuli that is reflexive, repeated, and invariable in nature."). Fletcher has about fifteen hundred customers.  Comments he purportedly made to five of them over the course of a decade about the need for additional flood coverage do not remotely qualify or quantify as a habit within the meaning the Rule 406.  The record demonstrates that Fletcher sold nearly two hundred NFIP supplemental policies in the years preceding Katrina – twelve of them to policyholders living in the Leonards' neighborhood.  Evidence was lacking to suggest that Fletcher's statements to other policyholders revealed an invariable, reflexive response to his treatment of inquiries about supplemental flood insurance.  Admission of the statements under Rule 406 was an abuse of discretion.

## III.  CONCLUSION

Subject to the foregoing explanation of the trial court's errors, we AFFIRM.