DENNIS, Circuit Judge,
dissenting.
The issue is whether the RSUI Excess Coverage Policy (the “Excess Policy”) incorporates the Primary Policy’s anti-concurrent causation (ACC) clause and Water Exclusion so as to exclude coverage of perils by the Excess Policy to the same extent as they are excluded from coverage by the Primary Policy. In my view, the Excess Policy is ambiguous in this respect and could be reasonably interpreted either way. See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex.2003) (insurance policy provisions are ambiguous where they are “susceptible to two or more reasonable interpretations”). Because Texas law requires courts to construe ambiguous policy provisions in favor of coverage for the insured, see State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex.1995) (ambiguous terms must be construed “against the insurer in a manner that favors coverage”), the majority’s interpretation in favor of the insurance company and against coverage is incorrect.
The Primary Policy’s definition of “Covered Causes of Loss” and its “Exclusions,” which include the ACC clause and the Water Exclusion provisions are as follows:
A. Covered Causes Of Loss
... Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
1. Excluded in Section B., Exclusions; or
2. Limited in Section C., Limitations; that follow
B. Exclusions
*942 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
g. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not....
I agree with the majority that “[t]he plain language of the [Primary Policy’s] ACC Clause and Water Exclusion, read together, exclude from coverage [under the Primary Policy] any damage caused by a combination of wind and water.” Majority Op. at 941. Our decision in Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419 (5th Cir.2007), so held. However, I disagree with the majority’s subsequent conclusion that the only reasonable interpretation of the Excess Policy is that it incorporates the Primary Policy’s coverage exclusions.
The relevant provisions of the Excess Policy are the Insuring Clause and the Maintenance of Primary Insurance clause — what the majority calls “the Incorporating Clauses” — as well as the “Perils Covered” clause:
8. Perils Covered: All Risk[s] Excluding Flood and Earthquakef.]
INSURING CLAUSE:
Subject to the limitations, terms and conditions contained in this Policy or added hereto, [RSUI] agrees to indemnify [ARM] in respect of direct physical loss or damage to the [covered] property ... caused by any such perils as are set forth in Item 8 of the schedule, and which are also covered by and defined in the [Primary Policy].
MAINTENANCE OF PRIMARY INSURANCE
In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions ... as are contained in or as may be added to the [Primary Policy] prior to the happening of a loss for which claim is made hereunder....
These three provisions of the Excess Policy are patently ambiguous. They can be reasonably read to provide coverage only to the same extent as provided for in the Primary Policy. They can also reasonably be read to provide coverage for all perils except flood and earthquake. Under this reasonable interpretation, the Excess Policy does not incorporate the Primary Policy’s ACC clause and Water Exclusion because they are exclusions from coverage, not covered perils, and are related to flood, which is not a peril covered by the Excess Policy.[1]
The majority, however, reads the ambiguous Excess Policy in only one way: against coverage and in favor of the insur- *943 anee company. In this diversity case, Texas law requires that this ambiguity be resolved in favor of coverage and the insured. For these reasons, I respectfully dissent.

. This latter interpretation is supported by our decision in Wentwood Woodside I, LP v. GMAC Commercial Mortgage Corp., 419 F.3d 310 (5th Cir.2005), where we confronted a very similar multilayer insurance scheme, with a nearly identical Maintenance of Primary Insurance provision in the top-layer insurance policy. Id. at 312-13, 315. Flood was not a covered peril in the excess insurance policy, and we read the provision in the excess insurance policy that incorporated the terms of the primary policy ‘‘[i]n respect of the perils hereby insured against” to preclude incorporation of an Errors and Omissions clause with respect to flood damage because flood was not a covered peril. Id. at 315-16. Here, exactly the same reasoning leads to the reasonable interpretation of the Excess Policy that it does not incorporate the Primary Policy’s ACC and Water Exclusion clauses because they are terms relating to flood, a peril that is not covered by the Excess Policy.