# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

———————————

No. 98-30766

———————————

**SUZANNE L. BABCOCK and ROBERT F. BABCOCK,**

**Plaintiffs-Appellees,**

**VERSUS**

**HARTMARX CORPORATION,**

**Defendant-Appellant.**

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

July 26, 1999

Before REAVLEY, POLITZ, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Suzanne and Robert Babcock sued Hartmarx Corporation ("Hartmarx") under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, for life insurance benefits owed on their deceased son's policy. The district court entered summary judgment for the Babcocks. Concluding that the suit is time-barred, we reverse and render judgment for Hartmarx.

I.

Craig Babcock worked at Porter's-Stevens, Inc., a subsidiary of Hartmarx Specialty Stores, Inc. ("HSSI"), which was a subsidiary of Hartmarx. Hartmarx's affiliates could adopt its employee benefits plans, including a long-term disability plan, a group medical plan, and a group life insurance plan, with Hartmarx serving as plan administrator. HSSI and

Porter's-Stevens adopted the plans and paid premiums for Babcock's basic life insurance benefits in an amount equal to his annual salary. Babcock also purchased optional life insurance benefits in the same amount, for which he paid by payroll deductions. Hartmarx served as a conduit through which HSSI forwarded premiums to the insurer, John Hancock; Hartmarx never paid an employer portion of any premiums for HSSI or Porter's-Stevens.

Babcock discontinued work because of a terminal illness. He received short-term disability benefits in the form of continued salary, and, for a few months, premiums were deducted for the long-term disability plan, the group medical plan, and the optional life insurance. For the next couple of months, because of a pending sale by Hartmarx of all of its capital stock in HSSI to an unrelated third party, he sent personal checks to HSSI's office for the monthly premium payments.

As of the date of the sale, HSSI ceased to be a subsidiary of Hartmarx. The stock purchase agreement provided that HSSI would no longer be a participating employer under any of Hartmarx's benefits programs and that Hartmarx would honor claims under the benefits plans only until November 1, 1992.

HSSI set up a new insurance plan with Northwestern National Life. Carolyn Haack, HSSI's Vice President of Human Resources, informed HSSI employees by memo that Northwestern would be the new insurance carrier as of November 1, 1992. John Hancock ceased covering Babcock and even notified him of a claim that had been denied because the services were rendered after his coverage had ended. Northwestern processed Babcock's claims for medical benefits after November 1, 1992.

Babcock qualified for long-term disability. Loretta Osowski, Hartmarx's Manager of Pension Plans Administration, informed him by letter that his monthly disability benefits would commence on December 1, 1992, and that the premiums for his group medical plan and long-term disability plan would be waived during the time that he received long-term disability benefits. The letter did not mention Babcock's life insurance coverage.

Babcock died on February 1, 1993, and Hartmarx paid a long-term disability death benefit to his estate a month later. From February 1993 through August 1993, Babcock's parents and sister, the executrix of Babcock's estate, made oral and written demands on HSSI and Hartmarx for insurance benefits. Hartmarx refused to pay because, among other reasons, it had not received any premiums after September 1992.

In August 1993, on Babcock's behalf, his sister filed a consumer complaint with the Illinois Department of Insurance, alleging that Hartmarx had refused to pay life insurance benefits. In April 1994, in bankruptcy proceedings that Porter's-Stevens and HSSI had filed in Illinois, Babcock's parents filed proofs of claim seeking payment of basic and optional life insurance benefits. They received no satisfaction.

II.

In October 1996, the Babcocks sued Hartmarx, claiming $64,000 in unpaid life insurance benefits. Hartmarx removed to federal court, and, on cross-motions for summary judgment, the court granted the Babcocks' motion, concluding that Hartmarx had breached a fiduciary duty under ERISA to

advise Babcock of any termination or material change in his insurance policies. The court also determined that the Babcocks had timely filed their claim within three years of when they had actual knowledge of the breach.

III.

Hartmarx contends that the action is time-barred because the Babcocks filed it more than three years after they had actual knowledge of the facts relevant to their suit, that it did not have a fiduciary duty to inform Babcock of the change in his life insurance coverage, and that, even if it did breach a duty, it should be liable for only half of the claimed damages, because no premiums were paid on the life insurance policy for several months before Babcock's death. We agree with Hartmarx that the action is time-barred. Because we render judgment for Hartmarx on this ground, we do not reach the remaining contentions.

A.

We review the grant or denial of summary judgment *de novo*, applying the same standards as did the district court. *See Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).[1] Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating an absence of evidence supporting the nonmovant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986). Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts indicating a genuine issue for trial. *See Webb*, 139 F.3d at 536.

B.

As the parties agree, ERISA's statute of limitations, found in § 413 of ERISA, 29 U.S.C. § 1113, applies because the Babcocks allege a breach of fiduciary duty.[2] That section imposes a limitations period that expires on the earlier of (1) six years from the date the cause of action arose or (2) three years from the date the plaintiff had "actual knowledge" of his claim. *See* 29 U.S.C. § 1113. Hartmarx does not dispute that the Babcocks filed within the six-year limitations period: They sued in October 1996, well within six years from the alleged breach in July 1993, when Hartmarx denied life insurance benefits to Babcock's beneficiaries, or in late 1992, when Hartmarx failed adequately to notify Babcock of pending changes in his coverage.

To determine whether the Babcocks sued within the three-year period, we must decide when they had "actual knowledge" of the breach or violation. In *Maher v. Strachan Shipping Co.,* 68 F.3d 951 (5th Cir. 1995), we explained that "actual knowledge" means "actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even

---

[1] The Babcocks suggest we review for clear error because the district court conducted a mini-trial before making its ruling. The court's opinion, however, states that it disposed of the case on cross-motions for summary judgment; *de novo* review therefore applies.

[2] The Babcocks originally also alleged a breach of their contractual plan rights but have abandoned this claim on appeal.

actual harm." *Id.* at 954 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)); *see also Reich v. Lancaster*, 55 F.3d 1034, 1057 (5th Cir. 1995). That is to say, actual knowledge requires that the Babcocks know not only of the events constituting the breach, but "also that those events supported a claim for breach of fiduciary duty or violation under ERISA." *Id.* (quoting *International Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Erie N. Am.*, 980 F.2d 889, 900 (3d Cir. 1992)).

Even under this permissive definition of actual knowledge, the Babcocks failed to file their suit within the three-year statute of limitations. Their actions between April and August 1993 evince actual knowledge that they had a potential claim under ERISA, making the suit filed in October 1996 untimely. Hartmarx points to several facts that demonstrate this knowledge:

(1) On April 12, 1993, Lisa Babcock, sister and executrix of decedent's estate, wrote to Hartmarx demanding payment on decedent's life insurance policies and noting that the relevant "group insurance plan functions under ERISA guidelines."

(2) In separate letters, dated July 12 and August 30, 1993, Robert and Suzanne Babcock wrote to Hartmarx demanding that it pay on the decedent's life insurance policy. Robert's letter argues that "my son was your employee," and "he paid his premiums on this insurance and I demand the proceeds." Suzanne's letter reiterated the Babcocks' view that "[t]his son of our's (sic) had payroll deductions for life insurance for years

and now you deny us, the beneficiaries, the right to it."

(3) On August 26, 1993, Lisa Babcock filed a formal complaint with the Illinois Department of Insurance against Hartmarx, contending that Hartmarx was decedent's employer and should therefore pay the proceeds of the now-transferred life insurance policies.

The veiled references to possible legal action indicate the Babcocks' belief that they had legal recourse against Hartmarx. In addition, to the extent the claim rests on a failure to notify Babcock of changes in his insurance, Robert Babcock testified in deposition that he handled all of Craig's mail during the last several months of his life, and thus must have been aware of any alleged failure.

Hartmarx thus persuasively argues that, by August 1993, the Babcocks knew that it had denied their life insurance claims; knew of the harm they allegedly suffered; were aware that the group insurance plan was covered under ERISA guidelines; had made demands for the money; knew that Hartmarx had denied their claim; and were aware that they might have a legal claim. This fulfills Hartmarx's summary judgment obligation to point out the absence of evidence supporting the timeliness of the Babcocks' case.

The district court explained neither when it thought the Babcocks had actual knowledge, nor why the undisputed evidence of the Babcocks' demand letters does not evince actual knowledge. Instead, in essence, it held that, because of confusion over which company was responsible for life insurance, the Babcocks did not have actual knowledge until they began

4

litigating. The Babcocks make a similar argument, asserting that they did not have actual knowledge of the breach until they had retained legal counsel and discovery began in similar litigation.

But the Babcocks fail to point to any specific information learned in that litigation that made them aware of this claim of breach of fiduciary duty. Indeed, they point to no material information related to these claims that they learned after August 1993. The correspondence indicates that the Babcock family knew not only of these material facts, but that the benefits were governed by ERISA and that they could seek redress in court. The formal complaint filed with the Illinois Department of Insurance demonstrates an acute awareness of the legal wrong they allege Hartmarx had committed.[3]

The Babcocks appear to argue that, even if they were aware that they had been wronged and could seek legal redress, it was not until they began discovery in the related litigation that they knew the exact cause of action. In fact, our precedent requires more than knowledge of the material facts; it requires knowledge that the facts support a claim under ERISA. *See Maher*, 68 F.3d at 954.[4] But we have not held that the plaintiff must know the precise cause of action.

The uncontradicted summary judgment evidence amply demonstrates that the Babcocks knew all material facts and that they could seek legal recourse for an ERISA violation. They have not pointed to any evidence that might constitute a genuine material fact for trial, nor have then even mentioned any material fact that shows they did not have actual knowledge of an ERISA action against Hartmarx by the end of August 1993. Our own review of the record finds no such genuine issue of material fact on the question of actual knowledge.

Judgment is REVERSED and RENDERED for Hartmarx.

---

[3] *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992) (holding that "[t]he letters of complaint to the State Board of Insurance and to the Plan Administrator further evidence actual knowledge of the facts giving rise to their causes of action more than four years before they filed suit.").

[4] *Accord International Union*, 980 F.2d at 900; *Gluck*, 960 F.2d at 1177-78. *But see Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996) (holding that plaintiff needs to know all (continued...)

[4](...continued) material facts of transaction or conduct, but not its illegality).