**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2010

No. 09-50653

Lyle W. Cayce
Clerk

ARM PROPERTIES MANAGEMENT GROUP,

Plaintiff – Appellee

v.

RSUI INDEMNITY COMPANY,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas
(1:07-CV-718)

Before JOLLY, DEMOSS, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal involves a dispute between an insured, ARM Properties Management Group (ARM), and one of its insurance carriers, RSUI Indemnity Company (RSUI). At issue is the second-layer excess insurance policy issued by RSUI (the RSUI Policy) under which ARM claims $5,500,587.03. The parties raise the following issues: (1) whether the RSUI Policy incorporates the anti-concurrent causation clause (the ACC Clause) and the water exclusion (the Water Exclusion) from the primary insurance policy; (2) whether RSUI's liability

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-50653

has attached under the RSUI Policy; (3) whether the RSUI Policy incorporates the flood deductible from the primary insurance policy; (4) whether the RSUI Policy's scheduled limit of liability provision requires that coverage sub-limits be determined on an aggregate basis; and (5) whether RSUI waived the RSUI Policy's anti-assignment clause and/or the insurable interest requirement. Because we hold that the ACC Clause and Water Exclusion were incorporated by the RSUI Policy, a threshold issue resolved in RSUI's favor, we do not reach the remaining issues. We therefore reverse and remand.

## Facts and Background

ARM is in the business of purchasing property insurance for hundreds of apartment complexes. By grouping separate properties together under a single policy, ARM is able to obtain better insurance rates for the property owners. When Hurricane Katrina struck the Mississippi Gulf Coast in August 2005, nine of ARM's covered properties sustained damage. Each of the properties had three "layers" of insurance coverage. Westchester Surplus Lines Insurance Company issued the primary insurance policy (the Primary Policy) with a $20 million coverage limit, including a $7.5 million flood damage sub-limit. Essex Insurance Company issued a first-layer excess insurance policy (the First-Layer Policy) with a $10 million coverage limit for damage amounts that exceed the Primary Policy limit. RSUI issued the RSUI Policy, a second-layer excess insurance policy with a $470 million coverage limit for damage amounts that exceed the combined primary and first-layer excess coverage limit of $30 million.

The Primary Policy and First-Layer Policy paid the combined liability limit of $30 million. RSUI has not paid any of ARM's claims. ARM contends that $5,500,587.03 in combined wind and water damage should be paid under the RSUI Policy. RSUI responds that no payment is due because such wind-water damage is excluded under the Primary Policy. The parties filed a Joint Stipulation of Facts in Lieu of Trial (the Joint Stipulation) with the district

2

court, and on July 16, 2009, the district court issued an order finding in favor of ARM. The district court found that (i) the Primary Policy's ACC Clause and Water Exclusion were not incorporated by the RSUI Policy; (ii) RSUI's liability had attached under the RSUI Policy; (iii) the Primary Policy's flood deductible was not incorporated by the RSUI Policy; (iv) the RSUI Policy's scheduled limit of liability applies on an aggregate basis; (v) the RSUI Policy's anti-assignment provision voided certain property owners' assignments of their claims to ARM; and (vi) ARM lacked an insurable interest but RSUI waived that requirement. The district court awarded ARM its full claim of $5,500,587.03, plus interest and attorneys' fees. This appeal followed.

## Discussion

The district court decided this case on cross motions for judgment based on the Joint Stipulation, which is essentially a summary judgment proceeding. *See Bank of La. v. Aetna U.S. Healthcare, Inc.*, 571 F. Supp. 2d 728, 729 n.1 (E.D. La. 2008), *aff'd*, 326 F. App'x 321 (5th Cir. 2009); *see also More v. Intelcom Support Servs., Inc.*, 960 F.2d 466, 469 (5th Cir. 1992). Our review is de novo, applying the same standards as would the district court. *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 338 (5th Cir. 1999).

In the Joint Stipulation, the parties agreed that if the RSUI Policy incorporates the Primary Policy's ACC Clause and Water Exclusion, "the total of the losses in question in this case will not reach RSUI's coverage layer, i.e., the covered losses will total less than $30 million, and thus ARM cannot recover under the RSUI policy." We address this threshold issue first and find that the ACC Clause and Water Exclusion were incorporated by the RSUI Policy.

The parties agree that Texas law governs the interpretation of the insurance policies. Under Texas law, the construction of an insurance policy is a question of law. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We apply the same rules to the interpretation of insurance policies

as to any other contract, and "read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). "We construe the policy to give effect to each term in the contract and to avoid rendering any term a nullity." *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 626 (5th Cir. 1998). Where the policy's language "can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Two provisions in the RSUI Policy directly reference the Primary Policy and expressly incorporate the Primary Policy's coverage parameters. The first is the "Insuring Clause," which provides:

> Subject to the limitations, terms and conditions contained in this Policy or added hereto, [RSUI] agrees to indemnify [ARM] in respect of direct physical loss or damage to the property . . . which are also covered by and defined in the [Primary Policy].

The second is the "Maintenance of Primary Insurance" Clause (collectively with the Insuring Clause, the Incorporating Clauses), which provides:

> In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions . . . as are contained in or as may be added to the [Primary Policy] prior to the happening of a loss for which claim is made hereunder.

Together, the Incorporating Clauses provide that the RSUI Policy covers only damage also covered by the Primary Policy and excludes any damage excluded by the Primary Policy. The question, therefore, is whether combined wind-water damage is covered by the Primary Policy's ACC Clause or is excluded by the Primary Policy's Water Exclusion.

The Primary Policy's ACC Clause provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of

any other cause or event that contributes concurrently or in any sequence to the loss.

The Primary Policy's Water Exclusion excludes from coverage certain water damage as follows:

> Water . . . Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

The district court held that "the ACC clause, as it operates with the Water Exclusion in the [Primary] Policy, does not relate to any peril insured in the RSUI policy and thus is not a provision adopted by that policy." We disagree.

Our case *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir. 2007) (applying Mississippi law), considered virtually identical insurance policy clauses as those presented in this case. In *Leonard*, we found that the ACC Clause denied coverage "whenever an excluded peril and a covered peril combine to damage" the insured property. *Id.* at 425. The language specifically "addresses situations in which damage arises from the synergistic action of a covered peril, e.g., wind, and an excluded peril, e.g., water." *Id.* We held in *Leonard* that

> The clause unambiguously excludes coverage for water damage 'even if another peril'—e.g., wind—'contributed concurrently or in any sequence to cause the loss.' The plain language of the policy leaves the district court no interpretive leeway to conclude that recovery can be obtained for wind damage that 'occurred concurrently or in sequence with the excluded water damage.' . . . The clause is not ambiguous.

*Id.* at 430 (internal citation omitted).

The same situation is present in this case. Like *Leonard*, "[t]he only species of damage covered under the [RSUI Policy] is damage caused *exclusively* by wind. But [because] wind and water synergistically caused the *same* damage, such damage is excluded." *Id.* (emphasis in original); *see Bilbe v. Belsom*, 530 F.3d 314, 317 n.3 (5th Cir. 2008). The plain language of the ACC Clause and

No. 09-50653

Water Exclusion, read together, exclude from coverage any damage caused by a combination of wind and water. Thus, the combined wind-water damage at issue here is a peril expressly excluded from coverage by the Primary Policy and the ACC Clause and Water Exclusion are therefore expressly incorporated by the RSUI Policy pursuant to the Incorporating Clauses.

## Conclusion

We hold that, pursuant to the Joint Stipulation, ARM cannot prove sufficient wind-only damage to reach RSUI's insurance layer. Because we resolve this threshold issue in favor of RSUI, we do not reach the remaining issues raised on appeal. The district court order is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

6

No. 09-50653

DENNIS, Circuit Judge, dissenting.

The issue is whether the RSUI Excess Coverage Policy (the "Excess Policy") incorporates the Primary Policy's anti-concurrent causation (ACC) clause and Water Exclusion so as to exclude coverage of perils by the Excess Policy to the same extent as they are excluded from coverage by the Primary Policy. In my view, the Excess Policy is ambiguous in this respect and could be reasonably interpreted either way. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (insurance policy provisions are ambiguous where they are "susceptible to two or more reasonable interpretations"). Because Texas law requires courts to construe ambiguous policy provisions in favor of coverage for the insured, *see State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (ambiguous terms must be construed "against the insurer in a manner that favors coverage"), the majority's interpretation in favor of the insurance company and against coverage is incorrect.

The Primary Policy's definition of "Covered Causes of Loss" and its "Exclusions," which include the ACC clause and the Water Exclusion provisions are as follows:

A. Covered Causes Of Loss

. . . Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
1. Excluded in Section B., Exclusions; or
2. Limited in Section C., Limitations;
that follow

. . . .

B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

7

No. 09-50653

g.   Water

(1)   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not . . . .

I agree with the majority that "[t]he plain language of the [Primary Policy's] ACC Clause and Water Exclusion, read together, exclude from coverage [under the Primary Policy] any damage caused by a combination of wind and water." Majority Op. at 5-6. Our decision in *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir. 2007), so held. However, I disagree with the majority's subsequent conclusion that the only reasonable interpretation of the Excess Policy is that it incorporates the Primary Policy's coverage exclusions.

The relevant provisions of the Excess Policy are the Insuring Clause and the Maintenance of Primary Insurance clause—what the majority calls "the Incorporating Clauses"—as well as the "Perils Covered" clause:

3.   Perils Covered:   All   Risk[s]   Excluding   Flood and Earthquake[.]

. . . .

INSURING CLAUSE:

Subject to the limitations, terms and conditions contained in this Policy or added hereto, [RSUI] agrees to indemnify [ARM] in respect of direct physical loss or damage to the [covered] property . . . caused by any such perils as are set forth in Item 3 of the schedule, and which are also covered by and defined in the [Primary Policy].

. . . .

MAINTENANCE OF PRIMARY INSURANCE

In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions . . . as are contained in or as may be added to the [Primary Policy] prior to the happening of a loss for which claim is made hereunder . . . .

These three provisions of the Excess Policy are patently ambiguous. They can be reasonably read to provide coverage only to the same extent as provided for in the Primary Policy. They can also reasonably be read to provide coverage

for all perils except flood and earthquake. Under this reasonable interpretation, the Excess Policy does not incorporate the Primary Policy's ACC clause and Water Exclusion because they are *exclusions* from coverage, not covered perils, and are related to flood, which is not a peril covered by the Excess Policy.[1]

The majority, however, reads the ambiguous Excess Policy in only one way: against coverage and in favor of the insurance company. In this diversity case, Texas law requires that this ambiguity be resolved in favor of coverage and the insured. For these reasons, I respectfully dissent.

---

[1] This latter interpretation is supported by our decision in *Wentwood Woodside I, LP v. GMAC Commercial Mortgage Corp.*, 419 F.3d 310 (5th Cir. 2005), where we confronted a very similar multilayer insurance scheme, with a nearly identical Maintenance of Primary Insurance provision in the top-layer insurance policy. *Id.* at 312-13, 315. Flood was not a covered peril in the excess insurance policy, and we read the provision in the excess insurance policy that incorporated the terms of the primary policy "[i]n respect of the perils hereby insured against" to preclude incorporation of an Errors and Omissions clause with respect to flood damage because flood was not a covered peril. *Id.* at 315-16. Here, exactly the same reasoning leads to the reasonable interpretation of the Excess Policy that it does not incorporate the Primary Policy's ACC and Water Exclusion clauses because they are terms relating to flood, a peril that is not covered by the Excess Policy.