Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-11-00193-CV

**THE LYND COMPANY**,
Appellant

v.

**RSUI INDEMNITY COMPANY**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-20466
Honorable Karen H. Pozza, Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:      Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  March 28, 2012

REVERSED AND RENDERED

This is an appeal from a take-nothing summary judgment rendered in favor of appellee.

The issues on appeal center on the interpretation of an excess coverage insurance policy issued

by appellee, RSUI Indemnity Company ("RSUI"), to appellant, The Lynd Company ("Lynd").

We reverse the trial court's judgment and render judgment in favor of Lynd.

**BACKGROUND**

Lynd manages apartment complexes across the country.  During the period of March 31, 2005 through March 31, 2006, Westchester Fire Insurance Company ("Westchester") provided the primary property insurance coverage for the complexes under a single policy, with a total policy limit of $20 million per occurrence.  In addition to the coverage for the buildings, personal contents, and loss of business income, the Westchester policy provided separate coverage for code compliance and debris removal costs.  RSUI provided excess property coverage for damage over Westchester's $20 million limit, up to $480 million per year per occurrence.  There is no dispute that both policies provided coverage for hurricane damage.

On September 23, 2005, Hurricane Rita damaged fifteen Lynd apartment complexes, all covered by both policies, causing damage in excess of $24 million.  Westchester and RSUI retained Bill Franz, an independent insurance adjuster with GAB Robbins NA, Inc., to investigate Lynd's loss.  Franz initially determined the fifteen complexes suffered the loss in the amount of $24,716,620.51, which was agreed to by Lynd.  After Westchester paid its $20 million policy limit, Lynd sent RSUI a proof of loss in the amount of $4,544,310.96, which RSUI refused to pay.  Instead, RSUI had Franz recalculate the loss amount based on its interpretation of a "Scheduled Limit of Liability" endorsement contained in the RSUI policy (but not contained in the Westchester policy).  The new loss amount for all buildings was $18,756,788.38, plus $52,867.45 in personal property loss, plus $1,916,832 in loss of rents, less the deductible of $25,000, and less Westchester's payment of $20 million, for a total amount owed by RSUI of $701,487.83.  RSUI required Lynd to file a proof of loss in the amount of $701,487.83 "without prejudice to the ultimate liability of the previously submitted proof of loss in the amount of $4,544,310.96."  RSUI paid Lynd the $701,487.83.  Nine days later, Lynd sent RSUI a demand

letter claiming $3,842,823.08 more was due from RSUI. The parties have since stipulated that the unpaid portion of Lynd's claim totals $4,190,400.65. Lynd sued RSUI for the unpaid amount. At trial, the parties filed cross-motions for summary judgment. The trial court granted RSUI's motion and denied Lynd's. This appeal by Lynd ensued.

## STANDARD OF REVIEW

We review an order granting a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A traditional motion for summary judgment should be granted only when the movant establishes there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).

Insurance policies are interpreted according to the same principles that govern contract interpretation. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004); *see also MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999) (interpretation of an unambiguous contract is a question of law, which is reviewed de novo). Our primary goal is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). We must read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Id.*

## CALCULATION OF LOSS

The dispositive issue in this appeal concerns how RSUI may limit its liability when multiple properties are damaged in a single occurrence. Resolution of this issue involves the

interpretation of RSUI's policy, which contains a "Scheduled Limit of Liability" endorsement that reads, in pertinent part, as follows:

<u>SCHEDULED LIMIT OF LIABILITY</u>

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

It is understood and agreed that the following special terms and conditions apply to this policy:

1.   In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

> a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;
>
> b. 115% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or
>
> c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

. . .

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

Lynd argues the above language requires RSUI to apply the same method of limiting its liability (a, b, or c) to all of the insured properties when damage to the properties arises from the

same "occurrence." Lynd contends RSUI may not "mix and match" the options. On appeal, RSUI first argues there is no summary judgment evidence that it "mixed and matched" the options. We disagree. It is undisputed that fifteen of Lynd's properties sustained damage from the same "occurrence." The worksheet prepared by Franz pursuant to RSUI's instructions contains a list of the properties and various columns. The four columns relevant to this discussion show the building replacement value,[1] the amount equal to 115% of the replacement value, the building loss claimed by Lynd, and the claim amount associated with the loss that RSUI agreed to pay. For twelve of the buildings, the loss amount claimed by Lynd was less than both the replacement value and the 115% limitation amount. For these twelve buildings, RSUI agreed to pay the loss amount claimed by Lynd, in other words, "the actual adjusted amount of the loss"—option (a). Two of the properties, however, sustained losses that exceeded both their replacement value and the 115% limitation amount. For these two buildings, RSUI agreed to pay only the 115% limitation amount—option (b). We conclude this is sufficient evidence to establish that RSUI did not select one limitation option and apply it uniformly to all properties damaged as a result of the single hurricane "occurrence."

RSUI next asserts its liability is limited under the endorsement for each separately scheduled item of property. Thus, RSUI would decide which option to use for each separate property, as opposed to selecting one option and applying it to the aggregate loss sustained by all the properties arising from one "occurrence." We believe both option (a) and option (b) require that the losses be aggregated when multiple properties are all damaged as a result of one "occurrence." Option (a) requires the "actual adjusted amount of the loss" of all properties to be aggregated before "applicable deductibles and primary and underlying excess limits" are deducted. A determination of whether option (a) or option (b) yields the "least" amount of

---

[1] The building replacement value is the value reported by Lynd for the purpose of the Statement of Values.

liability necessarily requires the aggregation of "115% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values." On appeal, RSUI asserts that aggregating the losses in order to determine which limitation option yields the lowest valuation of damages mistakenly transforms its policy into a "blanket" policy, when it is more properly characterized as a "scheduled" policy.

A scheduled policy is a policy in which "each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of the other items of property." 12 COUCH ON INS. § 175.90. A blanket policy is a policy that "attaches to, and covers to its full amount, every item of property described in it." *Id.* at § 177.72. The RSUI policy here includes a limitation option in subparagraph (b) that limits RSUI's liability to "115% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company . . . ." Limitation option (b) provides "scheduled" coverage.[2] However, this option is not the only possible limitation on RSUI's liability. As stated above, the "Scheduled Limit of Liability" includes two other possible limitations on RSUI's liability—subsection (a) and subsection (c)—and the stated value for each scheduled property does not factor into either of these limitations. Which of the three limitation options applies is determined by which option yields "the least" loss "in any one occurrence."

---

[2] *See Gulfport-Brittany, LLC v. RSUI Indemnity Co.*, 339 Fed. App'x 413, 2009 WL 2337777, at *3 (5th Cir. 2009); *Reliance Nat'l Indem. Co. v. Lexington Ins. Co.*, No. 01 C 3369, 2002 WL 31409576, *8 (N.D. Ill. Oct. 23, 2002) (finding that "[b]ecause the Lexington Policy separately scheduled different items of property [on its Statement of Values on file with the Company], it is a scheduled policy with specific limits for particular items and not a blanket coverage policy."); *see also Reliance Ins. Co. v. Orleans Parish School Bd.*, 322 F.2d 803, 806 (5th Cir. 1963) (a blanket policy "insures property collectively without providing . . . for a distribution of the insurance to each item."); *see also* Couch on Insurance, 2d Ed., § 54:83 ("A distinction must be made between a policy which speaks in terms of a lumpsum obligation or value of the property and one which separately schedules different items of property. In the latter case, each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of the other items of property.").

For this reason, to decide the dispositive issue before us, we need not decide whether the RSUI policy provides for scheduled coverage or blanket coverage because our task is to read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Balandran*, 972 S.W.2d at 741. We do this without regard to how the policy or the coverage it provides is labeled.[3] Therefore, we turn to the issue of whether RSUI may apply different limitations on its liability for losses that all arise from the same occurrence to different properties (*i.e.*, apply option (a) to some properties and option (b) to other properties) or whether RSUI must select the same option (either (a) or (b)) and apply that option to each scheduled property. The only court to directly address this issue is the Western District of Texas in *ARM Properties Management Group v. RSUI Indemnity Co.*, No. A-07-CA-718-SS, 2008 WL 5973220 (W.D. Tex. Aug. 25, 2008).[4] In *ARM Properties*, the court considered and rejected the same argument made by RSUI in this appeal.

In *ARM Properties*, ARM (the insured) had purchased more than one layer of insurance to cover several properties. RSUI provided the third excess layer of insurance. After nine properties were damaged by Hurricane Katrina, and after the first and second layer insurers paid

---

[3] We also note that each of the cases relied upon by RSUI considered whether the policy at issue was a scheduled policy or a blanket policy. Even if we were to characterize the policy or its coverage, we disagree with such a broad characterization. We believe it is the coverage, not the policy as a whole, that is either scheduled or blanket.

[4] This 2008 opinion from the Western District was authored by Judge Sparks, and RSUI repeatedly states that this opinion was overruled by the Fifth Circuit. In his 2008 opinion, Judge Sparks granted ARM's motion for partial summary judgment and remanded the cause for further proceedings. The parties later filed cross-motions for summary judgment on different issues, including whether the RSUI policy incorporated the anti-concurrent causation clause (the ACC Clause) and the water exclusion clause from the primary insurance policy. In a 2009 opinion, Judge Sparks concluded RSUI was liable for damages caused by a combination of winds and flooding, which application of ACC Clause would allegedly preclude. On appeal to the Fifth Circuit, ARM raised a variety of complaints, including the issue regarding the ACC Clause and the issue considered by Judge Sparks in his 2008 opinion. The Fifth Circuit considered only the issue regarding the ACC Clause because it was dispositive and, because the Fifth Circuit disagreed with the district court, the Fifth Circuit reversed and remanded the cause for further proceedings. *ARM Prop. Mgmt. Group v. RSUI Indem. Co.*, 400 Fed. Appx. 938, *3 (Fifth Cir. 2010). Thus, the Fifth Circuit never reached the issue decided by Judge Sparks in 2008 and which we are faced with in this appeal.

their policy limits, ARM filed a claim with RSUI. RSUI denied the claim for several reasons. ARM sued, alleging, among other arguments, that RSUI had significantly undervalued its claimed losses by improperly applying the policy's "limit of liability provisions." Similar to the policy at issue in the appeal before this panel, the policy in *ARM Properties* contained the following "limit of liability provisions":

> In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":
>
> a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;
>
> b. 115% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or
>
> c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

*Id.* *2.

The policy defined "occurrence" as "any one loss, disaster, casualty, or series of losses, disasters, or casualties arising from one event." Specifically, in the case of a hurricane, "one event shall be construed to be all losses arising during a continuous period of 72 hours." Neither party disputed that each of the nine properties insured under this policy was a "scheduled item of property." *Id.*

Similar to the argument it makes in this appeal, RSUI argued the above language allowed it to apply the lowest valuation method to each of the nine insured properties. Also like here, RSUI argued that aggregate valuation of the losses arising out of Hurricane Katrina impermissibly converted a "scheduled" policy into a "blanket" policy. Similar to Lynd's argument here, ARM argued this language required RSUI to apply the same valuation method to

all of the insured properties damaged in one occurrence and select the method that yielded the lowest valuation of damages in the aggregate. The court agreed with ARM, concluding that the definition of "loss" under the policy "contemplates either a single loss or a related series of losses arising out of one occurrence" and an "occurrence" was defined as an event causing a loss or series of losses; a hurricane related occurrence covers all hurricane-related losses occurring within a seventy-two hour period. *Id.* at *8. According to the court, "[a]ny reasonable interpretation of the Limit of Loss clause must take into account these key, controlling definitions, which explicitly aggregate all losses arising from a single event." *Id.*

The district court decided it was not necessary to decide whether the policy at issue was a scheduled or blanket policy because whether blanket or scheduled, "by its plain terms the extent of RSUI's liability is the lesser of (a) the actual adjusted amount of all losses arising out of one occurrence; (b) 115% of the value of each scheduled item of property insured; or (c) the policy limit." *Id.* at *9. "The policy definitions of 'loss' and 'occurrence' both contemplate a series of losses subject to the Limit of Liability clause. Therefore, the valuation method should be applied uniformly to all the losses in a series." *Id.*

In this appeal, RSUI contends the Fifth Circuit has since directly addressed and rejected "the blanket approach applied in *ARM Properties* . . . instead, affirming a scheduled approach." We disagree with RSUI's interpretation of the two cited cases upon which it relies. In *Gulfport-Brittany, LLC v. RSUI Indemnity Co.*, 339 Fed. App'x 413, 2009 WL 2337777 (5th Cir. 2009), a single apartment complex was insured under a policy that contained clauses similar to those here:

> In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":
>
> a. The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

b. 100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

c. The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

*Id.* at *2.

Gulfport-Brittany argued the policy was ambiguous because it was unclear whether the per occurrence limit for damage to the apartments was $140 million (the policy limit) or $2,458,014 (as stated in the latest Statement of Values). The Fifth Circuit concluded the policy was not ambiguous and the policy provided "overall occurrence limits of $140,000,000.00, and limit[ed] coverage for each individual property to the sub-limits listed on the Statement of Values on file with the company." *Id.* at 5. The Fifth Circuit therefore concluded RSUI's liability with respect to the apartment complex was limited to the $2,458,014.00 individually stated amount identified on the last Statement of Values. *Id.*

However, *Gulfport-Brittany* may be distinguished from the case before this court in two important aspects. First, only one apartment complex was at issue in *Gulfport-Brittany*; therefore, the issue of whether the RSUI could "mix and match" limitation options was not considered by the Fifth Circuit. Second, although the policy in that case contained three possible limitations on RSUI's liability, only one limitation was discussed—the "100% of the individually stated value for each scheduled item of property" limitation. The opinion does not indicate the amount of loss suffered by the apartment, how the amount of that loss related to the possible limitations on RSUI's liability, or which of the three possible limitations yielded "the least" liability for RSUI. Accordingly, although the *Gulfport-Brittany* court faced a similar

issue, it did not face the precise issue as here. Therefore, we do not believe the *Gulfport-Brittany* court "rejected" the district court's holding in *ARM Properties*.

The other case cited by RSUI is *RSUI Indemnity Co. v. Benderson Development Co.*, No. 2:09-cv-88-FtM-29DNF339, 2011 WL 32318, at *1 (M.D. Fla. Jan. 5, 2011). That case involved damage to four different properties all insured under an excess coverage policy that contained liability-limitation options similar to those in *Gulfport-Brittany*. *Id.* at *4. The parties disputed whether the policy was a scheduled policy or a blanket policy. Without any discussion of the three possible limitations on the insurer's liability, the court concluded the policy was a scheduled policy, rather than a blanket policy. *Id.* Again, however, the *Benderson Development* court did not address the same issue as in the case before this court.

The precise issue with which we are faced is one of first impression for a Texas state court, and we believe Judge Sparks's opinion in *ARM Properties* provides persuasive guidance. Applying well-established rules of contract interpretation, we begin with the general "Insuring Clause" of the RSUI policy and then look to any limitations or modifications of that clause. The "Insuring Clause" provides as follows:

> *Subject to the limitations, terms and conditions contained in this Policy or added hereto*, [RSUI] agrees to indemnify [Lynd] in respect of direct physical loss or damage to the property described in the schedule while located or contained as described in the schedule, occurring during the period stated in the schedule and caused by any of such perils as are set forth in item 3 of the schedule, *and which are also covered by and defined in the policy(ies) specified in the schedule and issued by the "Primary Insurer(s)" [here, Westchester] stated therein*. [Emphasis added.]

The first italicized language requires us to look to any other limitations or terms of the RSUI policy that modify the general language of the policy. One such modification is contained in the Scheduled Limit of Liability endorsement. The second italicized language obligates RSUI to indemnify Lynd only for those losses caused by perils set forth in the RSUI policy and

specified in the Westchester policy (hereinafter, the "covered loss provisions"). This language is consistent with another clause contained in the RSUI policy, the "following form" clause, which states that the RSUI policy is "subject to the same warranties, terms and conditions . . . as are contained in or as may be added to" the Westchester policy.

The applicable covered loss provisions in the Westchester policy taken together with the applicable provisions in the RSUI policy determine the amount of loss Lynd may claim. RSUI's liability for the balance of any claim, after its liability is triggered, is limited by the Scheduled Limit of Liability endorsement. Thus, the RSUI policy requires an adjuster to engage in a two-step process: first, determine the amount of loss for each scheduled property by looking to the covered loss provisions of both the Westchester policy and the RSUI policy; and second, apply the limitations on liability contained in the RSUI policy to determine the amount RSUI is liable for. It is the second step that is implicated in this appeal. Therefore, we turn again to the language of the Scheduled Limit of Liability endorsement in the RSUI policy.

The parties agree that the third of the three limitation options (the policy limit) does not apply here; therefore, in this case, RSUI was entitled to limit its liability "to the least of the following in any one 'occurrence'": (a) "the actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits"; "or" (b) "115% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits." Subsection (a)—the actual adjusted loss limitation—is not linked to the stated value of the covered property.[5] Only subsection (b)—the 115% limitation—is specifically linked to the individually stated value for each scheduled property as shown on the

---

[5] We also note that subsection (c)—the policy limit—is not linked to the stated value of the covered property.

Statement of Values. And only subsection (b) calculates RSUI's limitation on its liability as a percentage (115%) of value. We also note that the Statement of Values serves to identify the locations for which coverage is provided[6] and provides for the calculation of the premium.[7] Therefore, the mere presence of a Statement of Values does not transform an entire policy into a scheduled coverage policy. Instead, in addition to identification of coverage location and premium calculation, the Schedule of Values provides the method by which RSUI may—if it elects option (b)—calculate the limitation on its liability as a percentage of the value of the property, as opposed to the "actual adjusted loss" incurred by the property. Finally, the use of the disjunctive "or" indicates the parties' intent to provide RSUI with a choice of one of the available limitation options when determining its liability for losses arising from one "occurrence." *See Neighborhood Comm. on Lead Pollution. v. Bd. of Adjustment of the City of Dallas*, 728 S.W.2d 64, 68 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (noting that "[o]ne of the recognized usages of 'and' is to refer to 'either or both' of two alternatives, when 'or' might be interpreted as referring to only one or the other"). An "occurrence" is defined as "any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event." "When the term 'occurrence' applies to a loss or series of losses from the perils of . . . [a] hurricane . . ., one event shall be construed to be all losses arising during a continuous period of 72 hours." It is undisputed that the losses Lynd's properties sustained all arose from one "occurrence."

Reading all the provisions together and giving meaning to every word used, we conclude the policy requires RSUI to apply the same limitation option uniformly to all losses arising from the same "occurrence." *See ARM Prop.*, 2008 WL 5973220, *9. Therefore, RSUI may limit its

---

[6] "Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy."

[7] "The premium for this policy is based upon the Statement of Values . . . ."

liability for damages to all properties arising from this one hurricane occurrence by applying either option (a) or option (b), but it may not apply both when the damage arises from the same "occurrence." Accordingly, the trial court erred in rendering summary judgment in favor of RSUI.

## CONCLUSION

We sustain Lynd's first issue and reverse the trial court's summary judgment in favor of RSUI.[8] The parties have stipulated to the "least" amount in the event this court agrees with Lynd that RSUI must apply the same limitation option uniformly to all losses arising from the same "occurrence"; therefore, remand is not necessary. Accordingly, we render judgment in favor of Lynd in the amount stipulated to by the parties as follows:

| | |
|---|---|
| Amount owed under the policy | $4,190,400.65 |
| Texas Insurance Code Chapter 542 Interest | $2,486,837.49 |
| Pre-Judgment Interest | $ 651,307.13 |
| Attorney's Fees through trial | $ 139,745.00 |
| Attorney's Fees for an appeal to the Court of Appeals | $ 50,000.00 |
| TOTAL | $7,518,290.27 |
| Attorney's Fees if appealed to the Texas Supreme Court | $ 25,000.00 |

Sandee Bryan Marion, Justice

---

[8] Because our resolution of Lynd's first issue is dispositive, we need not address Lynd's remaining issues. TEX. R. APP. P. 47.1.

- 14 -